# U.S. District Court
## Southern District of Iowa (Central)
## CIVIL DOCKET FOR CASE #: <u>4:25–cv–00150–RGE–WPK</u>

| | |
|---|---|
| Donnelly v. Des Moines Register and Tribune Co., Inc. et al | Date Filed: 04/24/2025 |
| Assigned to: Judge Rebecca Goodgame Ebinger | Date Terminated: 11/06/2025 |
| Referred to: Magistrate Judge William P. Kelly | Jury Demand: Both |
| Case in other court:  IASD, 4–24–cv–449 | Nature of Suit: 370 Other Fraud |
| Polk County, Iowa, CVCV068445 | Jurisdiction: Federal Question |

Cause: 15:0045 Federal Trade Commission Act (unfair or deceptive acts)

**Plaintiff**

**Dennis Donnelly**
*on behalf of himself and all others similarly situated*

represented by **Robert Richard Anderson**
LAW OFFICE OF ROBERT R. ANDERSON
1001 EAST 6TH STREET
P.O. BOX 4
ATLANTIC, IA 50022
515–382–1278
Email: Bobandersoniowan@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Daniel Robert Suhr**
CENTER FOR AMERICAN RIGHTS
1341 WEST FULLERTON AVENUE
SUITE 170
CHICAGO, IL 60614
414–588–1658
Email: danielsuhrncjl@gmail.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

V.

**Defendant**

**Des Moines Register and Tribune Co., Inc.**

represented by **Nick Klinefeldt**
FAEGRE DRINKER BIDDLE & REATH LLP (IA)
801 GRAND AVENUE
33RD FLOOR
DES MOINES, IA 50309–8011
515–447–4717
Email: nick.klinefeldt@faegredrinker.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**David Yoshimura**
FAEGRE DRINKER BIDDLE & REATH
LLP (IA)
801 GRAND AVENUE
33RD FLOOR
DES MOINES, IA 50309−8011
515−447−4738
Fax: 515−248−9010
Email: david.yoshimura@faegredrinker.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Defendant**

**J. Ann Selzer**  represented by

**Matthew A. McGuire**
NYEMASTER GOODE PC (DSM)
700 WALNUT STREET
SUITE 1300
DES MOINES, IA 50309−3899
515−283−8014
Email: mmcguire@nyemaster.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Adam Steinbaugh**
FOUNDATION FOR INDIVIDUAL
RIGHTS AND EXPRESSION
510 WALNUT STREET
SUITE 900
PHILADELPHIA, PA 19106
215−717−3473
Email: adam@thefire.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Conor T. Fitzpatrick**
FOUNDATION FOR INDIVIDUAL
RIGHTS AND EXPRESSION
510 WALNUT STREET
SUITE 900
PHILADELPHIA, PA 19106
215−717−3473
Email: conor.fitzpatrick@thefire.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Greg Harold Greubel**

FOUNDATION FOR INDIVIDUAL
RIGHTS AND EXPRESSION
510 WALNUT STREET
SUITE 900
PHILADELPHIA, PA 19106
267–838–8083
Email: greg.greubel@thefire.org
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Robert Corn–Revere**
FOUNDATION FOR INDIVIDUAL
RIGHTS AND EXPRESSION
700 PENNSYLVANIA AVENUE, SE
SUITE 340
WASHINGTON, DC 20003
202–973–4200
Fax: 202–973–4499
Email: bob.corn–revere@thefire.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Defendant**

**Selzer & Company**                    represented by    **Matthew A. McGuire**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Adam Steinbaugh**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Conor T. Fitzpatrick**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Greg Harold Greubel**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Robert Corn–Revere**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Defendant**

**Gannett Co., Inc.**      represented by   **Nick Klinefeldt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**David Yoshimura**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/24/2025 | 1 | NOTICE OF REMOVAL by Gannett Co., Inc. from Iowa District Court for Polk County, case number CVCV068445. Filing fee paid in the amount of $ 405, receipt number AIASDC−5730006., filed by Gannett Co., Inc.. Rule 16 Notice of Dismissal set for 6/23/2025. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Klinefeldt, Nick) (Entered: 04/24/2025) |
| 04/24/2025 | 2 | CERTIFICATE *Pursuant to L.R. 81* re 1 Notice of Removal, by Gannett Co., Inc.. (Klinefeldt, Nick) (Entered: 04/24/2025) |
| 04/24/2025 | 3 | Answer to Complaint (Notice of Removal) by Gannett Co., Inc., Des Moines Register and Tribune Company.(Klinefeldt, Nick) (Entered: 04/24/2025) |
| 04/25/2025 | 4 | Corporate Disclosure Packet Note: Counsel should download the attached corporate disclosure packet in compliance with Local Rule 7.1 for the disclosure statements. Corporate Disclosure Statement deadline set for defendant 5/16/2025. (btg) (Entered: 04/25/2025) |
| 04/30/2025 | 5 | MOTION for Leave to Appear Pro Hac Vice Receipt Number: AIASDC−5734760 Fee paid in the amount of $100. by Dennis Donnelly. (Suhr, Daniel) (Entered: 04/30/2025) |
| 05/01/2025 | 6 | TEXT ORDER granting 5 Motion for Leave to Appear Pro Hac Vice Daniel R. Suhr. Signed by Magistrate Judge William P. Kelly on 5/1/2025. (nla) (Entered: 05/01/2025) |
| 05/01/2025 | 7 | NOTICE of Appearance by Greg Harold Greubel on behalf of Selzer & Company, J. Ann Selzer (Greubel, Greg) (Entered: 05/01/2025) |
| 05/01/2025 | 8 | Corporate Disclosure/Statement of Interest by Selzer & Company. (Greubel, Greg) (Entered: 05/01/2025) |
| 05/01/2025 | 9 | Joint MOTION for Extension of Time to File *Response to the Petition* by Selzer & Company, J. Ann Selzer.Motions referred to William P. Kelly. Responses due by 5/15/2025. (Greubel, Greg) (Entered: 05/01/2025) |
| 05/01/2025 | 10 | NOTICE of Appearance by Matthew A. McGuire on behalf of Selzer & Company, J. Ann Selzer (McGuire, Matthew) (Entered: 05/01/2025) |
| 05/01/2025 | 11 | TEXT ORDER granting 9 Joint Motion to Extend Selzer Defendants' Time to Respond to the Petition. The Selzer Defendants may have to and including 5/23/2025 to respond to the Petition. If claims remain following the parties' initial motion practice, the parties shall submit a proposed Rule 16(b) and Rule 26(f) scheduling |

| | | |
|---|---|---|
| | | order and discovery plan within 30 days of the Court's order resolving the parties' initial motion practice. Signed by Magistrate Judge William P. Kelly on 5/1/2025. (rls) (Entered: 05/01/2025) |
| 05/02/2025 | 12 | MOTION for Leave to Appear Pro Hac Vice by Selzer & Company, J. Ann Selzer. (Fitzpatrick, Conor) (Entered: 05/02/2025) |
| 05/02/2025 | 13 | MOTION for Leave to Appear Pro Hac Vice by Selzer & Company, J. Ann Selzer. (Steinbaugh, Adam) (Entered: 05/02/2025) |
| 05/02/2025 | 14 | MOTION for Leave to Appear Pro Hac Vice by Selzer & Company, J. Ann Selzer. (Corn–Revere, Robert) (Entered: 05/02/2025) |
| 05/02/2025 | 15 | TEXT ORDER granting 12 Motion for Leave to Appear Pro Hac Vice Conor T. Fitzpatrick; granting 13 Motion for Leave to Appear Pro Hac Vice Adam B. Steinbaugh; granting 14 Motion for Leave to Appear Pro Hac Vice Robert Corn–Revere. Signed by Magistrate Judge William P. Kelly on 5/2/2025. (nla) (Entered: 05/02/2025) |
| 05/08/2025 | 16 | NOTICE of Appearance by Nick Klinefeldt on behalf of Gannett Co., Inc., Des Moines Register and Tribune Co., Inc. (Klinefeldt, Nick) (Entered: 05/08/2025) |
| 05/08/2025 | 17 | NOTICE of Appearance by David Yoshimura on behalf of Gannett Co., Inc., Des Moines Register and Tribune Co., Inc. (Yoshimura, David) (Entered: 05/08/2025) |
| 05/13/2025 | 18 | Corporate Disclosure/Statement of Interest by Gannett Co., Inc.. (Klinefeldt, Nick) (Entered: 05/13/2025) |
| 05/13/2025 | 19 | Corporate Disclosure/Statement of Interest by Des Moines Register and Tribune Co., Inc.. (Klinefeldt, Nick) (Entered: 05/13/2025) |
| 05/19/2025 | 20 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Selzer & Company, J. Ann Selzer. Responses due by 6/2/2025. (Attachments: # 1 Brief in Support of Motion to Dismiss Under Rule 12(b)(6))(Corn–Revere, Robert) (Entered: 05/19/2025) |
| 05/23/2025 | 21 | First MOTION to Remand to State Court *or in the alternative for jurisdictional discovery* by Dennis Donnelly.Motions referred to William P. Kelly. Responses due by 6/6/2025. (Attachments: # 1 Brief in Support)(Suhr, Daniel) (Entered: 05/23/2025) |
| 06/02/2025 | 22 | First AMENDED COMPLAINT *per FRCP 15(a)(1)(B)* against All Defendants. All Defendants., filed by Dennis Donnelly. (Attachments: # 1 Exhibit Redline)(Suhr, Daniel) (Entered: 06/02/2025) |
| 06/05/2025 | 23 | **TEXT ORDER** Denying as moot 20 Motion to Dismiss for Failure to State a Claim. In light of 22 First Amended Complaint, the Court finds the motion to dismiss moot. Signed by Judge Rebecca Goodgame Ebinger on 6/5/2025. (h) (Entered: 06/05/2025) |
| 06/06/2025 | 24 | RESPONSE to Motion re 21 First MOTION to Remand to State Court *or in the alternative for jurisdictional discovery* filed by Gannett Co., Inc., Des Moines Register and Tribune Co., Inc.. Replies due by 6/13/2025. (Attachments: # 1 Declaration of Nicholas A. Klinefeldt, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Declaration of Helen Trask)(Klinefeldt, Nick) (Entered: 06/06/2025) |
| 06/13/2025 | 25 | REPLY re 21 First MOTION to Remand to State Court *or in the alternative for jurisdictional discovery* filed by Dennis Donnelly.(Suhr, Daniel) (Entered: 06/13/2025) |

| 06/16/2025 | 26 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Selzer & Company, J. Ann Selzer. Responses due by 6/30/2025. (Corn–Revere, Robert) (Entered: 06/16/2025) |
|---|---|---|
| 06/16/2025 | 27 | Unresisted MOTION to file overlength brief *in Support of Motion to Dismiss Amended Complaint Under Rule 12(b)(6)* by Selzer & Company, J. Ann Selzer.Motions referred to William P. Kelly. Responses due by 6/30/2025. (Attachments: # 1 Brief in Support of Motion to Dismiss Amended Complaint Under Rule 12(b)(6))(Corn–Revere, Robert) (Entered: 06/16/2025) |
| 06/16/2025 | 28 | **TEXT ORDER** granting 27 Defendants J. Ann Selzer and Selzer & Company's Unresisted Motion for Leave to File Overlength Brief in Support for Motion to Dismiss Amended Complaint Under Rule 12(b)(6). Defendant J. Ann Selzer and Selzer & Company may file their overlength brief in support of their Motion to Dismiss. Signed by Magistrate Judge William P. Kelly on 6/16/2025. (rls) (Entered: 06/16/2025) |
| 06/16/2025 | 29 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Gannett Co., Inc., Des Moines Register and Tribune Co., Inc.. Responses due by 6/30/2025. (Klinefeldt, Nick) (Entered: 06/16/2025) |
| 06/16/2025 | 30 | Unresisted MOTION to file overlength brief by Gannett Co., Inc., Des Moines Register and Tribune Co., Inc..Motions referred to William P. Kelly. Responses due by 6/30/2025. (Attachments: # 1 Exhibit A – Brief, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F)(Klinefeldt, Nick) (Entered: 06/16/2025) |
| 06/17/2025 | 31 | **TEXT ORDER** granting 30 Des Moines Register & Tribune Co. and Gannett Co., Inc.'s Unopposed Motion for Leave to File Overlength Brief in Support of their Motion to Dismiss. Defendants Des Moines Register & Tribune Co. and Gannett Co., Inc. may file their overlength brief in support of their Motion to Dismiss. Signed by Magistrate Judge William P. Kelly on 6/17/2025. (rls) (Entered: 06/17/2025) |
| 06/17/2025 | 32 | BRIEF In Support of Motion to Dismiss First Amended Complaint by Gannett Co., Inc., Des Moines Register and Tribune Co., Inc. re 22 Amended Complaint . (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Klinefeldt, Nick) Modified on 6/25/2025 – Linked to Motion 29 (sml). (Entered: 06/17/2025) |
| 06/17/2025 | 33 | BRIEF in Support of Motion to Dismiss Amended Complaint Under Rule 12(b)(6) by Selzer & Company, J. Ann Selzer re 22 Amended Complaint . (Corn–Revere, Robert) Modified on 6/25/2025 – Linked to Motion 26 (sml). (Entered: 06/17/2025) |
| 06/27/2025 | 34 | Unresisted MOTION to file overlength brief by Dennis Donnelly.Motions referred to William P. Kelly. Responses due by 7/11/2025. (Attachments: # 1 Exhibit Proposed Brief)(Suhr, Daniel) (Entered: 06/27/2025) |
| 06/27/2025 | 35 | **TEXT ORDER** granting 34 Plaintiff's Unresisted Motion to File Oversized Brief. The Clerk of Court is directed to detach and file [34–1] Plaintiff's Consolidated Response Brief in Opposition to the Motions to Dismiss. Signed by Magistrate Judge William P. Kelly on 6/27/2025.(rls) (Entered: 06/27/2025) |
| 06/30/2025 | 36 | RESPONSE BRIEFto Motion re 26 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 29 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Dennis Donnelly. Replies due by 7/7/2025. (btg) . (Entered: |

| | | |
|---|---|---|
| | | 06/30/2025) |
| 07/07/2025 | 37 | Unresisted MOTION to file overlength brief by Selzer & Company, J. Ann Selzer.Motions referred to William P. Kelly. Responses due by 7/21/2025. (Attachments: # 1 Reply to Plaintiff's Consolidated Response Brief in Opposition to the Motions to Dismiss)(Corn−Revere, Robert) (Entered: 07/07/2025) |
| 07/07/2025 | 38 | **TEXT ORDER** granting 37 Defendants J. Ann Selzer and Selzer & Company's Unresisted Motion for Leave to File Overlength Reply to Plaintiff's Consolidated Response Brief in Opposition to the Motions to Dismiss. The Clerk of Court shall detach and file [37−1] Defendants J. Ann Selzer and Selzer & Company's Reply to Plaintiff's Consolidated Response Brief in Opposition to the Motions to Dismiss. Signed by Magistrate Judge William P. Kelly on 7/7/2025.(rls) (Entered: 07/07/2025) |
| 07/07/2025 | 39 | Unresisted MOTION to file overlength brief by Gannett Co., Inc., Des Moines Register and Tribune Co., Inc..Motions referred to William P. Kelly. Responses due by 7/21/2025. (Attachments: # 1 Press Defendants Des Moines Register & Tribune Co. and Gannett Co., Inc.'s Reply Brief in Support of Motion to Dismiss)(Klinefeldt, Nick) (Entered: 07/07/2025) |
| 07/07/2025 | 40 | **TEXT ORDER** granting 39 Press Defendants Des Moines Register & Tribune Co. and Gannett Co., Inc.'s Unopposed Motion for Leave to File Overlength Reply Brief in Support of Motion to Dismiss. The Clerk of Court shall detach and file [39−1] Press Defendants Des Moines Register & Tribune Co. and Gannett Co., Inc.'s Reply Brief in Support of Motion to Dismiss. Signed by Magistrate Judge William P. Kelly on 7/7/2025.(rls) (Entered: 07/07/2025) |
| 07/08/2025 | 41 | REPLY BRIEF re 29 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Selzer & Company, J. Ann Selzer. (btg) Modified on 7/8/2025 (btg). Linked to 26 Motion to Dismiss (Main Document 41 replaced on 7/8/2025) (btg). (Entered: 07/08/2025) |
| 07/08/2025 | 42 | REPLY BRIEF re 29 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Gannett Co., Inc., Des Moines Register and Tribune Co., Inc. (btg) (Main Document 42 replaced on 7/8/2025) (btg). (Entered: 07/08/2025) |
| 08/05/2025 | 43 | **TEXT ORDER** SETTING SCHEDULING CONFERENCE. Remote Scheduling Conference set for 8/25/2025 at 10:30 AM before Magistrate Judge William P. Kelly. Counsel shall join via Webex, with meeting ID 2301−540−1362 and password "iasd−wpk". *Photographing, recording, or broadcasting of any judicial proceedings, including proceedings held by remote conference, is strictly and absolutely prohibited.* The parties shall file a proposed scheduling order and discovery plan as provided under Local Rule 16 by 8/18/2025. Signed by Magistrate Judge William P. Kelly on 8/27/2025. (rls) (Entered: 08/05/2025) |
| 08/12/2025 | 44 | Joint MOTION to Stay *Discovery and Continue Scheduling Conference* by Gannett Co., Inc., Des Moines Register and Tribune Co., Inc..Motions referred to William P. Kelly. Responses due by 8/26/2025. (Klinefeldt, Nick) (Entered: 08/12/2025) |
| 08/13/2025 | 45 | **TEXT ORDER** granting 44 Joint Motion to Stay Discovery and Continue Scheduling Conference. The Scheduling Conference set for 8/25/2025 is continued until further order of the Court. The parties shall submit a Proposed Scheduling Order and Discovery Plan 14 days following the Court's ruling on the pending 21 Motion to Remand to State Court and 26 Motion to Dismiss for Failure to State a Claim. Signed by Magistrate Judge William P. Kelly on 8/13/2025. (rls) (Entered: 08/13/2025) |

| 09/29/2025 | 46 | Errata re 36 Response to Motion filed by Dennis Donnelly. (Attachments: # 1 Errata Corrected Version)(Suhr, Daniel) Modified on 10/3/2025 (btg). Linked to Motions 26 and 29 . (Entered: 09/29/2025) |
|---|---|---|
| 10/22/2025 | 47 | **ORDER** Denying 21 Motion to Remand to State Court. See order for particulars. Signed by Judge Rebecca Goodgame Ebinger on 10/22/2025. (h) (Entered: 10/22/2025) |
| 11/06/2025 | 48 | **ORDER** Granting 26 and 29 Motions to Dismiss for Failure to State a Claim. See order for particulars. Signed by Judge Rebecca Goodgame Ebinger on 11/6/2025. (h) (Entered: 11/06/2025) |
| 11/06/2025 | 49 | JUDGMENT in favor of Des Moines Register and Tribune Co., Inc., Gannett Co., Inc., Selzer & Company, J. Ann Selzer against Dennis Donnelly. Signed by Clerk of Court Chandlor G. Collins on 11/6/2025. (btg) (Entered: 11/06/2025) |
| 11/17/2025 | 50 | Consent MOTION to file overlength brief *in support of Motion for Sanctions* by J. Ann Selzer, Selzer & Company.Motions referred to William P. Kelly. Responses due by 12/1/2025. (Attachments: # 1 Brief in Support of Motion for Sanctions)(Corn–Revere, Robert) (Entered: 11/17/2025) |
| 11/17/2025 | 51 | MOTION for Sanctions by J. Ann Selzer, Selzer & Company.Motions referred to William P. Kelly. Responses due by 12/1/2025. (Corn–Revere, Robert) (Entered: 11/17/2025) |
| 11/17/2025 | 52 | **TEXT ORDER** granting 50 Unresisted Motion to file overlength brief. The Clerks Office is directed to detach and file ECF 50–1, Defendant's Brief in Support of Motion for Sanctions. Signed by Magistrate Judge William P. Kelly on 11/17/2025. (kgs) (Entered: 11/17/2025) |
| 11/18/2025 | 53 | BRIEF by J. Ann Selzer, Selzer & Company re 51 MOTION for Sanctions . (btg) (Entered: 11/18/2025) |
| 11/25/2025 | 54 | Unresisted MOTION to file overlength brief *in response to Rule 11 motion* by Dennis Donnelly.Motions referred to William P. Kelly. Responses due by 12/9/2025. (Attachments: # 1 Exhibit Proposed Brief)(Suhr, Daniel) (Entered: 11/25/2025) |
| 11/25/2025 | 55 | **TEXT ORDER** granting 54 Unresisted Motion to file overlength brief. The Clerks Office is directed to detach and file ECF 54–1, Plaintiff's Brief in opposition to Dr. Selzer's Motion for Sanctions. Signed by Magistrate Judge William P. Kelly on 11/25/2025. (kgs) (Entered: 11/25/2025) |
| 11/26/2025 | 56 | RESPONSE Brief to Motion re 51 MOTION for Sanctions filed by Dennis Donnelly. Replies due by 12/3/2025. (btg) (Entered: 11/26/2025) |
| 12/03/2025 | 57 | Consent MOTION to file overlength brief *in Support of Motion for Sanctions Under Fed. R. Civ. P. 11, 28 U.S.C. § 1927* by J. Ann Selzer, Selzer & Company.Motions referred to William P. Kelly. Responses due by 12/17/2025. (Attachments: # 1 Reply Brief in Support of Motion for Sanctions Under Fed. R. Civ. P. 11, 28 U.S.C. § 1927, # 2 Exhibit 1: Attorney General Letter, # 3 Exhibit 2: Petition for Special Relief in the Matter of Repeal of the News Distortion Policy)(Corn–Revere, Robert) (Entered: 12/03/2025) |
| 12/03/2025 | 58 | **TEXT ORDER** granting 57 Unresisted Motion to file overlength brief. The Defendants may file their overlength brief and the accompanying exhibits. Signed by Magistrate Judge William P. Kelly on 12/3/2025. (kgs) (Entered: 12/03/2025) |

| 12/05/2025 | 59 | REPLY *Brief in Support of Motion for Sanctions Under Fed. R. Civ. P. 11, 28 U.S.C. § 1927* re 51 MOTION for Sanctions filed by J. Ann Selzer, Selzer & Company. (Attachments: # 1 Exhibit 1 – Attorney General Letter, # 2 Exhibit 2 – Petition for Special Relief in the Matter of Repeal of the News Distortion Policy)(Corn–Revere, Robert) (Entered: 12/05/2025) |
|---|---|---|
| 12/05/2025 | 60 | NOTICE OF APPEAL as to 49 Judgment by Dennis Donnelly. Fee paid in the amount of $605 receipt number AIASDC–5890424. (Suhr, Daniel) (Entered: 12/05/2025) |
| 12/08/2025 | 61 | NOTIFICATION OF APPEAL and NOA Supplement by District Court Clerk to USCA re 60 Notice of Appeal filed on 12/5/2025. (nla) (Entered: 12/08/2025) |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| DENNIS DONNELLY, on behalf of himself and all others similarly situated, | |
| Plaintiffs, | **No. 4:25-cv-00150-RGE-WPK** |
| v. | |
| DES MOINES REGISTER AND TRIBUNE COMPANY, J. ANN SELZER, SELZER & COMPANY, and GANNETT CO., INC., | **ORDER DENYING MOTION TO REMAND** |
| Defendants. | |

## I.    INTRODUCTION

Plaintiff filed this case in the Iowa District Court for Polk County, asserting claims against Defendants on behalf of himself and a putative class. Defendant Gannett Co., Inc. removed the case to this Court, asserting federal jurisdiction under the Class Action Fairness Act.

Plaintiff moves to remand the case to state court or, in the alternative, to seek jurisdictional discovery. Plaintiff argues this case falls within an exception to the Class Action Fairness Act. In response, Defendants assert no exception applies. Defendants also argue Plaintiff's request for jurisdictional discovery is unnecessary.

For the reasons set forth below, the Court denies Plaintiff's motion to remand and declines to permit jurisdictional discovery.

## II.    PROCEDURAL BACKGROUND

Donnelly initially filed suit in the Iowa District Court for Polk County on January 6, 2025, alleging five claims. Pet., ECF No. 1-1. Count I asserts fraudulent misrepresentation, or in the alternative reckless negligent misrepresentation (Alternative Count I); Count II asserts a consumer fraud claim; Count III asserts a professional malpractice claim; and Count IV asserts interference with the right to vote. *Id.* Gannett accepted service on April 4, 2025. Certificate of Service, ECF

No. 1-2. Gannett removed the case on April 24, 2025, on the basis of class action diversity jurisdiction under the Class Action Fairness Act. Def. Gannett's Notice of Removal ¶¶ 14–15, ECF No. 1. Shortly thereafter, Donnelly filed a motion to remand, which is now before the Court. Pl.'s Mot. Remand, ECF No. 21; Pl.'s Br. Supp. Mot. Remand, ECF No. 21-1. Gannett and Defendant Des Moines Register and Tribune Company resist, and Donnelly replies to Defendants' resistance. Def. Des Moines Register & Gannett's Resist. Pl.'s Mot. Remand, ECF No. 24; Pl's. Reply Supp. Mot. Remand, ECF No. 25.

## III.    LEGAL STANDARD

Removal is permitted in "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Removable cases include those falling within the Court's diversity jurisdiction. *Id.* The Class Action Fairness Act (CAFA) grants federal courts jurisdiction over cases in which the amount in controversy exceeds $5,000,000, there is at least minimal diversity between the parties, and there is at least 100 members in the class. 28 U.S.C. § 1332(d); *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010). Minimal diversity is satisfied where "any class member and any defendant are citizens of different states." *Westerfeld*, 621 F.3d at 822. The Class Action Fairness Act includes two mandatory exceptions to federal jurisdiction. *Id.*; § 1332(d)(4). These exceptions operate as an abstention doctrine, requiring courts to abstain from exercising jurisdiction but not stripping the court of subject matter jurisdiction. *Graphic Commc'ns Local 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 636 F.3d 971, 973 (8th Cir. 2011). The first mandatory exception, the local-controversy exception, states courts "shall decline to exercise jurisdiction":

> (i) over a class action in which—
> > (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
> > (II) at least 1 defendant is a defendant—
> > > (aa) from whom significant relief is sought by members of the plaintiff class;

2

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons . . . .

28 U.S.C. § 1332(d)(4)(A). The second mandatory exception, the home-state exception, requires abstention where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). Courts also have discretion to decline to exercise jurisdiction pursuant to the interest-of-justice exception. 28 U.S.C. § 1332(d)(3). This exception permits courts to "look[] at the totality of the circumstances" and "decline to exercise jurisdiction . . . over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed . . . ." *Id.* Both the home-state exception and the interest-of-justice exception require all primary defendants be citizens of the State in which the action was originally filed.

"Although CAFA expanded federal jurisdiction over class actions, it did not alter the general rule that the party seeking to remove a case to federal court bears the burden of establishing federal jurisdiction." *Westerfeld*, 621 F.3d at 822. Once the removing party has established that the Class Action Fairness Act's jurisdictional requirements have been met, the burden is on the party seeking remand to establish that one of the Class Action Fairness Act exceptions applies. *Id.* at 822–23 (citing *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007) ("[O]nce federal jurisdiction has been established under [§ 1332(d)(2)], the objecting party bears the burden of proof as to the applicability of any express statutory exception" under § 1332(d)(4)(A) and

(B))).

The Court relies on the facts alleged in Donnelly's state court petition rather than the amended complaint filed subsequent to removal. *See* Am. Compl., ECF No. 22. "It is axiomatic the court's jurisdiction is measured either at the time the action is commenced or, more pertinent to this case, at the time of removal." *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011) (citing *McLain v. Andersen Corp.*, 567 F.3d 956, 965 (8th Cir. 2009) (finding an argument in favor of remand based on an amended complaint was meritless because jurisdiction was to be determined at the time of removal)).

## IV.    DISCUSSION

Donnelly first alleges the motion to remand should be granted because Defendants did not timely remove the case. ECF No. 21-1 at 4–7. Donnelly also argues even if removal was timely, one of the Class Action Fairness Act exceptions applies. *Id.* Donnelly also seeks jurisdictional discovery. ECF No. 21-1 at 7. The Court first addresses the timelessness of removal, then addresses the applicability of the Class Action Fairness Act exceptions, and finally addresses the request for jurisdictional discovery.

### A.    Timeliness of Removal

Donnelly filed the state court action on January 6, 2025. ECF No. 21-1 at 4. Counsel for Defendants in this case also represent Defendants in another action with significantly overlapping subject matter.[1] Counsel for Donnelly provided Defense counsel with a courtesy copy of the complaint in this action and sought to discuss arranging convenient service of process. *Id.* Because of the overlapping subject matter between this case and the *Trump* case, counsel for Donnelly agreed to allow the full ninety-day timeline for service of process to run in this case so proceedings

---

[1] Defendants here are also defendants in *Trump v. Selzer*, No. 4:24-cv-00449-RGE-WPK (S.D. Iowa). The *Trump* case also centers around the Des Moines Register's publication of the Seltzer presidential election poll.

in the *Trump* case could develop further. *Id.* Once counsel for both parties recognized that the timeline for the *Trump* case would extend past the ninety-day window for service in this case, both parties met again to "finalize plans." *Id.* at 5. Service of process was accepted in this case on April 4, 2025. *Id.* Gannett's notice of removal was filed on April 24, 2025. *Id.* This is twenty days after service of process.

A "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant." 28 U.S.C. § 1446(b)(1). The clock for removal of a case to federal court starts on the date of service. *Murphy Bros., Inc v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 346 (1999) (rejecting "the so-called 'receipt rule'—starting the time to remove on receipt of a copy of the complaint, however informally, despite the absence of any formal service"); *Brown v. Tokio Marine & Fire Ins. Co.*, 284 F.3d 871, 873 (8th Cir. 2002) ("The law is settled in this Circuit that the thirty-day period to file a notice of removal runs from the time that a defendant is served with the complaint").

Donnelly requests this rule be set aside because of alleged "gamesmanship" by Defendants. ECF No. 21-1 at 5. It appears, however, that both parties agreed to additional time before service of process was accepted so the parties could monitor the progress of the *Trump* case. *Id.* at 4; ECF No. 24 at 7; Klinefeldt Decl. Supp. Defs. Des Moines Register & Gannett's Resist. Pl.'s Mot. Remand, Exs. 1–5, ECF Nos. 24-2, 3, 4, 5, 6. There is, therefore, no basis to depart from the bright line rule set forth in § 1446(b)(1). Notice of removal was filed twenty days after service of process. Notice of removal was therefore timely.

### B.    Class Action Fairness Act Exceptions

The Court next turns to the applicability of the three jurisdictional exceptions contained in the Class Action Fairness Act. Donnelly first asserts the local-controversy exception applies. ECF No. 21-1 at 7. Because Defendants have met their initial burden to show original jurisdiction, Donnelly has the burden to show an exception applies. *Cf. Westerfeld*, 621 F.3d at 822–23. To

demonstrate the applicability of the local-controversy exception, Donnelly has the burden of showing four things: 1) at least two-thirds of the putative class are citizens of the forum state; 2) at least one defendant whose actions form a significant basis for the claims must be a citizen of the forum state; 3) the principal injuries occurred in the forum state; and 4) there has been no similar class action filed within the last three years. *Cf.* 28 U.S.C. § 1332(d)(4)(A). Prongs two and four—the significant basis and similar class action prongs—are not in dispute. ECF No. 24 at 11. Donnelly seeks judicial discovery to establish the first—the citizenship prong. ECF No. 21-1 at 7. However, even if Donnelly shows at least two-thirds of the punitive class are from Iowa, Donnelly must still meet his burden as to the third—the principal injury prong. The question of principal injury is therefore the focus of the Court's discussion.

The local-controversy exception is a "narrow exception." *Atwood v. Peterson*, 936 U.S. 835, 839 (8th Cir. 2019). Donnelly does not address the principal injury prong in detail, but seemingly alleges an interpretation of "principal" in § 1332(d) as meaning where a majority or significant amount of the total injuries of the class took place. *See* ECF No. 21-1 at 8–9. This interpretation of the statute does not comport with the plain language of the statute, Congress's intent, or how other courts have interpreted the term.

For the local-controversy exception to apply, the principal injuries resulting from Defendants' alleged conduct must have been incurred in Iowa. This requires answering two questions: what is the alleged principal injury and where did class members suffer this injury. The Fifth Circuit recently considered the question of whether the local-controversy exception applies where the principal injury alleged is financial and most, but not all, class members reside in the forum state. *Cheapside Mins., Ltd. v. Devon Energy Prod. Co., L.P.*, 94 F.4th 492 (5th Cir. 2024) (finding the local-controversy exception did not apply where ninety percent of class members resided in the forum state but ten percent did not). The *Cheapside* court conducted a thorough and persuasive analysis and concluded "'principal injuries' qualitatively and comparatively

evaluates the types of injury, not the quantity of plaintiffs who were injured." *Id.* at 499–500.

"Thus, when some plaintiffs sustain their primary injuries in the forum state but others do not

§ 1332(d)(4)(A)(i)(III) is not satisfied." *Id.* at 500. The Court finds the Fifth Circuit's interpretation

of § 1332(d)(4)(A)(i)(III) articulated in *Cheapside* persuasive and applies it here.

An interpretation requiring all class members to incur the principal injury in the forum state

comports with how Congress contemplated the exception would apply. The Class Action Fairness

Act Senate Report provides an instructive example illustrating how the local-controversy

exception should apply to the present case:

> For example, a class action in which local residents seek compensation for
> property damage resulting from a chemical leak at a manufacturing plant in that
> community would fit this criterion, provided that the property damage was limited
> to residents in the vicinity of the plant. However, if the defendants engaged in
> conduct that could be alleged to have injured consumers throughout the country or
> broadly throughout several states, the case would not qualify for this exception,
> even if it were brought only as a single-state class action.

S. Rep. No. 109-14, at 40 (2005).

Identifying the principal injury here is simple, as only one injury is alleged. The principal

injury alleged here is "an ascertainable pecuniary loss: the value of a subscription to the *Des*

*Moines Register*." ECF No. 22 ¶ 157. The dispositive question is therefore whether all class

members incurred this financial injury in Iowa. The general rule is a plaintiff incurs a financial

injury in the place where they reside, not where the alleged conduct causing the injury occurred.

*See e.g., Cheapside*, 94 F.4th at 499 ("Generally, a plaintiff sustains an economic injury where he

resides."); *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 710 (2d Cir. 2002) (noting where

"injury is purely economic, the place of injury usually is where the plaintiff resides and sustains

the economic impact of the loss") (citation omitted); *CollegeSource, Inc. v. AcademyOne, Inc.*,

653 F.3d 1066, 1079 (9th Cir. 2011) ("We have repeatedly held that a corporation incurs economic

loss, for jurisdictional purposes, in the forum of its principal place of business.").

On the date the alleged injury occurred, November 3, 2025, the Des Moines Register had

subscribers in all fifty states. ECF No. 24-7 ¶ 4. Each of these subscribers experienced the same alleged financial injury—the decrease in value of their Des Moines Register subscription. This financial injury would be felt where these subscribers reside. Therefore, the principal injury alleged in the complaint occurred in all fifty states. Donnelly alleges Defendants engaged in conduct which financially injured consumers throughout the country. Therefore, the local-controversy exception does not apply.

Donnelly next asserts the home-state and interest-of-justice exceptions apply. ECF No. 21-1 at 8–9. Both these exceptions require all primary defendants be residents of Iowa. Donnelly claims Gannett is a secondary defendant "sued for its role as a parent company and for setting broad policies and standards." ECF No. 25 at 6. While the statute itself does not define what a primary defendant is, other courts examining this question have looked to whether defendants "are directly liable to the proposed class, as opposed to being vicariously or secondarily liable based upon theories of contribution or indemnification." *Vodenichar v. Halcon Energy Props., Inc.*, 733 F.3d 497, 504 (3d Cir. 2013) (encouraging courts to "determine if the plaintiffs seek to hold the defendant responsible for its own actions, as opposed to seeking to have it pay for the actions of others"). Courts also find all defendants to be primary defendants where the complaint fails to distinguish liability between defendants. *See Nicholson v. Prime Tanning Corp.*, No. 09-6083-CV, 2009 WL 2900042, at *2 (W.D. Mo. Sept. 3, 2009) ("Courts have routinely held that when a complaint fails to distinguish among defendants as to theories of liability, all are considered primary defendants.").

Donnelly seeks to hold Gannett liable for its own actions in relation to the release of the poll and does not meaningfully distinguish between theories of liability between the parties. The original petition contains several specific assertions against Gannett directly. Donnelly claims "Gannett has a history of telling its newspapers what they can and cannot do while covering politically sensitive issues." ECF No. 1-1 ¶ 86. In addition, Donnelly states "Gannett exercises

8

editorial control over its affiliates to an extent unseen in other chain newspapers." *Id.* ¶ 85. Donnelly offers a press release "showing the tie between Gannett and the *Register* specific to the poll." *Id.* ¶ 71. Donnelly also asserts the Des Moines Register's code of ethics is promulgated by Gannett. *Id.* ¶¶ 88–92. Donnelly states "Gannett may be held liable for its influence over its local papers' newsroom decisions." *Id.* ¶ 93. The original petition seeks to hold Gannett responsible for its actions in connection with the release of the poll. Gannett is therefore a primary defendant for purposes of § 1332(d)(3) and (d)(4)(B).

Because not all primary defendants are citizens of Iowa, the Court may not invoke the home-state exception or the interest-of-justice exception. None of the exceptions in the Class Action Fairness Act apply to this removal. Therefore, Donnelley's motion to remand is denied.

### C.    Jurisdictional Discovery

Donnelly requests jurisdictional discovery to obtain the Des Moines Register's list of subscribers. ECF No. 21-1 at 7. Through this discovery Donnelly expects to show more than two-thirds of these subscribers are citizens of Iowa. *Id.* However, conducting jurisdictional discovery would be futile. Here, the facts necessary to resolve the jurisdictional inquiry are known. *Cf. Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 598 (8th Cir. 2011) (affirming the district court's denial of jurisdictional discovery because "facts necessary to resolving the jurisdictional inquiry [were not] . . . unknown or disputed").

The dispositive question for the applicability of the local-controversy exception is whether there were subscribers in other states who incurred the alleged financial injury. It is undisputed that the Des Moines Register has subscribers across the country. Therefore, Donnelly would not be able to satisfy the principal injury prong no matter what jurisdictional discovery yielded.

The dispositive question for the applicability of the home-state exception and the interest-of-justice exception is whether Gannet is a primary defendant. The allegations contained in the original petition are sufficient to establish Donnelly seeks to hold Gannett liable for its

own actions in connection with the poll. Because Gannett is not an Iowa citizen, these exceptions cannot apply. Therefore, jurisdictional discovery would not alter this result either.

Accordingly, the Court declines to permit jurisdictional discovery.

## V.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff Dennis Donnelly's Motion to Remand, ECF No. 21, is **DENIED**.

**IT IS SO ORDERED**.

Dated this 22nd day of October, 2025.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| DENNIS DONNELLY, on behalf of himself and all others similarly situated | **No. 4:25-cv-00150-RGE-WPK** |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS** |
| DES MOINES REGISTER AND TRIBUNE CO., INC., J. ANN SELZER, SELZER & COMPANY, and GANNETT CO., INC., | |
| Defendants. | |

## I.    INTRODUCTION

The *Des Moines Register* released its Iowa poll of the 2024 presidential election on November 2 and 3, 2024. The poll predicted a surprisingly close race, a prediction which ultimately proved mistaken. Plaintiff Dennis Donnelly now brings suit on behalf of all *Des Moines Register* subscribers asserting this mistaken poll is "fake news" constituting fraud upon the entire punitive class.

For the reasons set forth below, the Court grants Defendants' motions to dismiss.

## II.    BACKGROUND

### A.    Factual Background

The Court accepts the facts alleged in Donnelly's amended complaint as true for the purpose of considering Defendants' motion to dismiss. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014). The Court also considers the *Des Moines Register* articles and associated methodology statements discussing the poll results, which are incorporated by reference in the complaint, attached as exhibits, and whose authenticity is unquestioned. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017); Defs.' Ex. A, ECF No. 32-1;

Defs.' Ex. B, ECF No. 32-2; Defs.' Ex. C, ECF No. 32-3; Defs.' Ex. D, ECF No. 32-4.

Donnelly is a West Des Moines resident and longtime subscriber to the *Des Moines Register*. Am. Compl. ¶ 8, ECF No. 22. Donnelly pays a yearly subscription fee of $69.99. *Id.* Defendant Des Moines Register and Tribune Co., Inc. owns and publishes the digital and print editions of the *Des Moines Register*. *Id.* ¶ 9. The Des Moines Register is a wholly owned subsidiary of Defendant Gannett Co., Inc. *Id.* Defendant Dr. J. Ann Selzer is a Des Moines resident and president of Defendant Selzer & Company. *Id.* ¶ 10. Selzer is a nationally recognized pollster with a wide spectrum of clients. *Id.* ¶ 77. Selzer has been the primary pollster for the *Des Moines Register* since 1987. *Id.* ¶ 80.

The *Des Moines Register* released its final 2024 presidential poll of Iowa online on November 2 and in print on November 3. *Id.* ¶¶ 63–64. The poll showed Vice President Kamala Harris with a 47 percent vote share compared to a 44 percent vote share for then-candidate Trump. *Id.* ¶ 23. The article accompanying the poll described the results as a "shocking development" and "hard for anybody to say they saw this coming." ECF No. 32 at 4. The *Des Moines Register* and Dr. Selzer included an extensive statement explaining the methodology of the poll. *Id.* at 15–16. The statement of methodology explained the poll was conducted by interviewing 1,038 Iowans over telephone with the phone numbers randomly selected. *Id.* From this random sample, the poll consisted of 808 responses with adjustments made to the sample to account for age, sex, and congressional district so that the random sample would better reflect the general population as shown by census data. *Id.*

Additional facts are discussed below as necessary.

### B.    Procedural Background

Donnelly initially filed suit in the Iowa District Court for Polk County on January 6, 2025, alleging five claims. Pet., ECF No. 1-1. Count I asserts fraudulent misrepresentation, or in the

alternative reckless negligent misrepresentation (Alternative Count I); Count II asserts a consumer fraud claim; Count III asserts a professional malpractice claim; and Count IV asserts interference with the right to vote. *Id.* Gannett removed the case on April 24, 2025. Gannett's Notice of Removal ¶¶ 14–15, ECF No. 1. Shortly thereafter, Donnelly filed a motion to remand. Pl.'s Mot. Remand, ECF No. 21. Donnelly later filed an amended complaint. ECF No. 22. The amended complaint recites the same claims as the original petition with additional allegations throughout, and adds an additional claim of civil conspiracy (Count V). *Id.* The Court denied the motion to remand. Order Den. Mot. Remand, ECF No. 47. Defendants filed motions to dismiss the amended complaint, which the Court now considers. Defs.' J. Ann Selzer and Selzer & Co.'s Mot. Dismiss, ECF No. 26; Defs.' Des Moines Register and Gannett's Mot. Dismiss, ECF No. 29.

Gannett and the *Des Moines Register* move to dismiss all claims against them. ECF No. 29; Defs.' Des Moines Register and Gannett's Br. Supp. Mot. Dismiss, ECF No. 31. Selzer and Selzer & Co. separately move to dismiss all claims against them. ECF No. 26; Defs.' J. Ann Selzer and Selzer & Co.'s Br. Supp. Mot. Dismiss, ECF No. 33. Donnelly resists Defendants' motions to dismiss. Pl.'s Consolidated Resist. Defs.' Mot. Dismiss, ECF No. 36. Defendants separately reply to Donnelly's consolidated resistance. Defs.' J. Ann Selzer and Selzer & Co.'s Reply Br. Supp. Mot. Dismiss, ECF No. 41; Defs.' Des Moines Register and Gannett's Reply Br. Supp. Mot. Dismiss, ECF No. 42.

The Court finds the parties' briefing adequately presents the issues without need for oral argument. *See* LR 7(c); Fed. R. Civ. P. 78(b).

## III.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim if a party fails "to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *accord Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016). The aim of the plausibility standard "is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian*, 760 F.3d at 848 (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)).

Plaintiffs must "nudge[] their claims across the line from conceivable to plausible, [else] their complaint must be dismissed." *Twombly*, 550 U.S. at 570. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 791 (8th Cir. 2014) (quoting *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012)).

> While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned."

*Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B Wright & Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)).

The Court must accept as true all factual allegations in the complaint but not its legal conclusions. *Iqbal*, 556 U.S. at 678–79. "In deciding a motion to dismiss under Rule 12(b)(6), a

court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant." *United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012).

## IV.    DISCUSSION

Defendants move to dismiss Donnelly's claims, asserting the First Amendment bars suits against newspapers engaged in political polling absent a showing of actual malice. ECF No. 32 at 18–24; ECF No. 33 at 4–11. Defendants also assert Donnelly fails to plead a prima facia case for each count alleged. ECF No. 32 at 27–45; ECF No. 33 at 23–42. Donnelly resists, asserting the First Amendment does not bar his claim, he has shown actual malice, and he has made out a prima facia case for each claim. *See* ECF No. 36.

The Court begins with a discussion of the applicable First Amendment standard then discusses each of the six claims alleged in turn. Upon review of the parties' filings, the Court concludes Donnelly has failed to sufficiently plead his claims and grants Defendants' motions to dismiss with prejudice.

### A.    First Amendment

The Court first addresses whether the First Amendment applies to Donnelly's claims. The First Amendment of the United States Constitution protects the freedom of speech and of the press. U.S. Const. amend. I. While, as discussed below, Donnelly's claims likely do not meet the plausibility threshold of *Iqbal*, for purposes of this First Amendment applicability discussion, the Court assumes the truth of Donnelly's assertion that Defendants knew the falsity of the poll results before they chose to publish it. Donnelly describes this case as no different than the sale of a defective oven for which the First Amendment affords no additional protections. ECF No. 36 at 6. Donnelly argues "fake news" is simply one way of describing a claim for defamation because the claim is predicated upon a false statement. *Id.* at 9. Yet this assertion ignores critical context—the

statements Donnelly alleges are false were political speech made by a newspaper covering a political campaign.

The Eighth Circuit has addressed whether knowingly false political speech is categorically outside the protection of the First Amendment. *281 Care Comm. v. Arneson*, 638 F.3d 621, 633–34 (8th Cir. 2011). The Eighth Circuit stated "the Supreme Court has never placed knowingly false campaign speech categorically outside the protection of the First Amendment and we will not do so today." *Id.* An important difference between false political speech and defamation is the latter seeks to vindicate the private rights of private individuals. *Id.* at 634. This is because "they cause damage to an individual's reputation that cannot easily be repaired by counterspeech, however persuasive or effective." *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 52 (1988). In contrast, "the First Amendment precludes punishment for generalized 'public' frauds, deceptions, and defamation." *281 Care Comm.*, 638 F.3d at 634 (quoting Charles Fried, *The New First Amendment Jurisprudence: A Threat to Liberty,* 59 U. Chi. L. Rev. 225, 238 (1992)). Donnelly does not claim the Iowa Poll damaged his personal reputation or the reputation of the class members. He instead asserts claims predicated on an alleged generalized deception in the form of a knowingly false political opinion poll. Applying this precedent, the Court concludes the speech at issue here is entitled to First Amendment protections.

The Court next turns to what level of protection is afforded to the speech Donnelly challenges. Each of Donnelly's claims must satisfy First Amendment scrutiny because "there is no free pass around the First Amendment." *281 Care Comm. v. Arneson*, 766 F.3d 774, 783 (8th Cir. 2014). A party cannot evade First Amendment scrutiny by "[s]imply labeling an action one for 'fraud.'" *Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 617 (2003). Donnelly acknowledges as such in his reply, stating "the First Amendment sets a standard (actual malice) that protects all speakers, media or non-media." ECF No. 36 at 13. Donnelly asserts all his

claims are governed by the actual malice standard. *Id.* at 14 n.4.

Defendants advocate for a higher standard than actual malice, asserting Donnelly's "claims amount to a frontal assault on the First Amendment" for which Defendants are entitled to "absolute immunity." ECF No. 32 at 18–19; *see* ECF No. 33 at 12. In the context of individuals and groups expressing divisive political opinions, the Supreme Court has granted broad immunity from liability. *See Snyder v. Phelps*, 562 U.S. 443, 452 (2011). The Supreme Court has observed "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964). This is why "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder*, 562 U.S. at 452 (quoting *Connick v. Myers,* 461 U.S. 138, 145 (1983)). Strong protections for "inappropriate or controversial" statements which relate to matters of public concern "ensure that courts themselves do not become inadvertent censors." *Snyder*, 562 U.S. at 452–53 (internal quotation marks and citation omitted).

However, it is far from clear whether the protections afforded to controversial political opinions expressed by individuals extend to newspapers reporting on matters of public concern as well. Neither the Supreme Court nor the Eighth Circuit has yet clearly announced such a category of absolute immunity from tort or consumer protection actions for newspapers engaged in political reporting. The Supreme Court has instead—although in the context of defamation cases—required plaintiffs to show actual malice when challenging a newspaper's constitutionally protected speech on matters of public concern. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964).

A statement is made with actual malice when it is made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* at 280. The actual malice standard originates from *Sullivan* and was developed in the context of defamation actions brought by public officials against the news media. *Id.* 279–80. *Sullivan* was decided "against the background of a

profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Id.* at 270. The speech-chilling concerns articulated in *Sullivan* are similar to the concerns supporting broad immunity for speech on matters of public concern articulated in *Snyder*, yet the Supreme Court has imposed different standards in each context. While the Court recognizes that newspapers often engage in speech on matters of public concern and therefore could be entitled to broad immunity for such speech, the Court also recognizes the actual malice standard has traditionally applied in the context of newspaper reporting. Because the Supreme Court has not yet recognized newspaper coverage on a matter of public concern as the type of speech which is entitled to broad immunity, the Court follows the actual malice standard here. Therefore, while current First Amendment jurisprudence may not provide Defendants absolute immunity from suit challenging their protected speech, they are entitled to, at minimum, the heightened protections of the actual malice standard.

Actual malice requires showing "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of [their] publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Importantly, "reckless conduct is not measured by whether a reasonably prudent [person] would have published, or would have investigated before publishing." *Id.* "Failure to recognize a mistake or ambiguity and its potential consequences is not evidence of a reckless disregard for the truth." *Nelson Auto Center, Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020). Instead, the *Sullivan* standard permits liability for "only those false statements made with the high degree of awareness of their probable falsity." *Garrison*, 379 U.S. at 74. Even "a showing of highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers" is insufficient to meet the strict actual malice standard. *Harte-Hanks Commn's, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989).

With this high standard in mind, the Court turns to how the *Iqbal/Twombly* pleading standard applies to claims of actual malice at the motion to dismiss stage. "[E]very circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice." *Nelson Auto*, 951 F.3d at 958 (quoting *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016)) (alteration in original). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* (quoting *Twombly*, 550 U.S. at 556) (alteration in original).

However, "[t]he standard of actual malice is a daunting one." *Howard v. Antilla*, 294 F.3d 244, 252 (1st Cir. 2002) (citation omitted). "For a pleading of actual malice to survive a motion to dismiss, the plaintiff must plead 'non-conclusory, non-speculative[] facts' 'from which malice might reasonably be inferred.'" *Franchini v. Bagnor Publ'g Co., Inc.*, 109 F.4th 13, 35 (1st Cir. 2024) (alteration in original) (citation omitted). "'[A]ctual-malice buzzwords,' such as that the defendant 'had "knowledge" that its statements were "false" or had "serious doubts" about their truth and a "reckless disregard" for whether they were false . . . are merely legal conclusions, which must be backed by well-pled facts' to be sufficient." *Id.* (citation omitted). "Where a plaintiff 'has not "nudged" his actual-malice claim "across the line from conceivable to plausible,"' the district court is right to dismiss the complaint." *Id.* (citing *Twombly*, 550 U.S. at 570).

Donnelly asserts the mere fact of the polling miss indicates "factual errors were made with knowledge that they presented a false description of the state of the electorate." *Id.* ¶ 97. Yet Donnelly does not allege the methodology used to conduct the poll differed from the one disclosed in the accompanying article, nor does he allege Defendants altered responses or weighed the sample in an attempt to produce a certain result. Without more facts alleged,

Donnelly's allegation, in essence is that Defendants designed the poll's methodology to produce an intentionally inaccurate result and knowingly published the inaccurate result. *See* ECF No. 22 ¶ 121; ECF No. 36 at 15, 17. No specific facts have been alleged to support such a theory. Donnelly notes the Iowa Poll is historically accurate and is the "gold standard" for polling in Iowa. ECF No. 22 ¶¶ 138, 139. Finding actual malice requires Donnelly to plausibly allege Defendants sacrificed decades of work in cultivating this reputation for accuracy by "knowingly or recklessly" manufacturing a poll they knew was incorrect in pursuit of an unclear goal. *See* ECF No. 36 at 33. With no factual allegations to support such an assertion and mere conclusory statements, Donnelly asserts only a bare legal conclusion accompanied by actual malice buzzwords that Defendants acted knowingly or recklessly. This is insufficient to meet the plausibility standard of *Iqbal/Twombly. Cf. Franchini*, 109 F.4th at 35.

Donnelly also cites to the magnitude of the polling miss as evidence of actual malice. ECF No. 22 ¶¶ 4, 6, 60. Donnelly points to a claim that there was only a one in 3.5 million chance of such an inaccuracy resulting from "legitimate means" or by "honest error." *Id.* ¶ 60. The Court is required to take all factual allegations as true for purposes of a motion to dismiss.[1] While the Court takes as true the probability of a five standard deviation error is one in 3.5 million, it is not required to take as true that a poll using Defendants' methodology would only deviate from the true election outcome once in 3.5 million samples because the factual predicate for such an assumption has not

---

[1] The Court notes this statistic appears to represent the two-sided probability of a result at least five standard deviations from the true result. This one in 3.5 million statistic assumes the Iowa Poll methodology was capturing a true representative sample of the electorate. The Court notes Donnelly in other parts of the amended complaint cites to pollsters who use a different methodology, including PollFair, which reweighed the Selzer sample using historical election poll data. ECF No. 22 ¶ 39. Using this alternate methodology changed the poll result by nine points. This indicates the reason for differences among polls is the different weighting methodologies used by pollsters. Therefore, the assumption undergirding the one in 3.5 million claim appears to lack support in the amended complaint.

been alleged in the complaint. Donnelly asserts such a large difference between the results of the Iowa Poll and other polls of the race should have given Defendants pause. ECF No. 22 ¶ 100. However, "[t]hat an editor or reporter should have known or should have doubted [the] accuracy of an article before publishing it is insufficient to show reckless disregard for the truth." *Lee v. TMZ Prods. Inc.*, 710 F. App'x 551, 560 (3d Cir. 2017) (alteration in original) (emphasis omitted). Donnelly's conclusory statements that the magnitude of the polling miss demonstrates actual malice therefore similarly fails to meet the plausibility standard of *Iqbal* and *Twombly*.

Finally, Donnelly asserts "Defendants' recklessness is seen when comparing their actions to industry customs and practices" and "principles of ethical conduct for . . . newsrooms." ECF No. 22 ¶ 99. The Court "do[es] not sit as some kind of journalism review seminar offering our observations on contemporary journalism and journalists." *Tavoulareas v. Piro*, 817 F.2d 762, 796 (D.C. Cir. 1987) (internal quotation marks and citation omitted). Allegations that a newspaper deviated from the ordinary ethics and customs of the industry are insufficient to establish actual malice. *Harte-Hanks*, 491 U.S. at 666 (1989) (holding "highly unreasonable conduct" and an "extreme departure from [ ] standards" is insufficient to allege actual malice); *Marcone v. Penthouse Int'l Mag. For Men*, 754 F.2d 1072, 1090 (3d Cir. 1985) (finding "unprofessional, even negligent" conduct does not constitute actual malice); *Triestman v. Turkheimer*, No. 19-cv-03081, 2020 WL 9594315, *2 (N.D. Ill. Aug. 4, 2020) (finding although "Defendant's published article admittedly contained a falsehood," "it is not enough that Defendant might have acted unprofessionally, carelessly, or irresponsibly under journalistic standards" to establish actual malice). Donnelly therefore again fails to allege with any specificity facts which would constitute actual malice.

Donnelly invokes mere buzzwords and speculation and falls far short of nudging his actual malice claim across the line from conceivable to plausible. However, while Donnelly's failure to

plausibly allege Defendants acted with actual malice is sufficient to dismiss Counts I–V, the Court need not dispose of the case on these grounds alone and continues its analysis of each claim below.

### B.    Misrepresentation

#### 1.    Fraudulent Misrepresentation

In Count I, Donnelly alleges fraudulent misrepresentation of the state of the election. ECF No. 22 ¶¶ 123–41. Under Iowa law, a claim for fraudulent misrepresentation requires a plaintiff to show: 1) a representation was made; 2) the representation was false; 3) the representation was material; 4) the defendant knew the representation was false; 5) the defendant intended to deceive the plaintiff; 6) the plaintiff acted in reliance on the truth of the representation and that reliance was justified; and 7) the representation was a proximate cause of plaintiff's damages. *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 400 (Iowa 2001). Donnelly's fraudulent misrepresentation claim fails because no false representation was made.

No false representation was made. Defendants conducted a poll using a particular methodology which yielded results that later turned out to be different from the event the poll sought to measure. The results of an opinion poll are not an actionable false representation merely because the anticipated results differ from what eventually occurred. *See Scott v. Roberts*, 612 F.3d 1279, 1283 (11th Cir. 2010) (noting "opinion polls of random selections of voters are snapshots with margins of error, and campaigns are, to say the least, dynamic projects"). Donnelly, and all other readers, knew how the poll was conducted because the poll results were accompanied by a thorough discussion of methodology. ECF No. 32-2 at 2–6. Donnelly does not claim the disclosed methodology was not followed, that results were falsified, or that Defendants altered the poll in some other way which did not reflect the publicly disclosed methodology. Defendants told readers exactly what they did and how they did it. Therefore, no false representation was made.

Donnelly instead seems to disagree with the methodology Defendants utilized to conduct

the poll. *See* ECF No. 22 ¶ 121. Donnelly states Defendants "designed the poll . . . in a way that the methodology resulted in a radically flawed result." *Id.* Donnelly points to other possible methodologies he believes Defendants should have utilized instead to yield poll results more closely resembling the eventual election result. *Id.* ¶ 38. Donnelly asserts "[he] read the story, and the story was all wrong." ECF No. 36 at 26. The "wrong" information in the story "was that [Vice President] Kamala Harris was ahead by three at the time of the poll" which was "not a speculation of a future outcome, but a factual statement of the present reality at the time the poll was taking [sic]." *Id.* at 29.

This allegation is flawed because it is impossible to know what the state of the presidential race was during the days the poll was conducted. As the Eleventh Circuit observed, polls are a mere snapshot of a dynamic and changing electorate. *Scott*, 612 F.3d at 1283. Donnelly cites to several other polls which had then-candidate Trump ahead by between seven and nine points. ECF No. 22 ¶ 31. The actual margin of the election was thirteen points. *Id.* ¶ 42. Donnelly cites these other polls favorably, yet, by his definition of misrepresentation, every single one of these polls cited also "was all wrong." ECF No. 36 at 26. These polls were not fraudulently misrepresenting the state of the race, they merely used different methodologies in an attempt to best capture a snapshot of a dynamic race. *See Buchanan v. Fed. Election Comm'n*, 112 F.Supp.2d 58, 76 (D.D.C. 2000) (recognizing claims of bias in a poll requires "at least some evidence that the independent pollsters have an incentive to rig the process in favor or against any candidate or party"). Donnelly fails to cite to any authority finding an opinion poll of a future event constitutes a false factual assertion.

Because Donnelly has failed to plausibly allege a false representation was made, the Court declines to address Defendants' arguments concerning Donnelly's additional failure to show materiality, intent, or justified reliance. Count I is dismissed with prejudice.

### 2.    Negligent Misrepresentation

In the alternative, Donnelly alleges negligent misrepresentation to a reckless degree. ECF

No. 22 ¶¶ 142–57. Donnelly "recognizes that he must show actual malice, which means either

knowing falsehood or reckless disregard." ECF No. 36 at 31. The Court has discussed Donnelly's

failure to establish actual malice above, and so focuses this analysis on the elements of negligent

misrepresentation under Iowa law. Negligent misrepresentation requires:

> (1) the defendant was in the business or profession of supplying information to
> others; (2) the defendant intended to supply information to the plaintiff or knew
> that the recipient intended to supply it to the plaintiff; (3) the information was false;
> (4) the defendant knew or reasonably should have known that the information was
> false; (5) the plaintiff reasonably relied on the information in the transaction that
> the defendant intended the information to influence; (6) and the false information
> was the proximate cause of damage to the plaintiff.

*McLeodUSA Telecommc'ns. Serv., Inc. v. Qwest Corp.*, 469 F.Supp.2d 677, 692 (N.D. Iowa

2007) (citing *Sain v. Cedar Rapids Comm. Sch. Dist.,* 626 N.W.2d 115, 127 (Iowa 2001)). The

Iowa Supreme Court "recognized professionals such as accountants, abstractors, and attorneys

owe a duty of care in supplying information to foreseeable third parties as members of a limited

class of persons who would be contemplated to use and rely upon the information." *Sain*, 626

N.W.2d at 123. The court in *Sain* emphasized the limitation on the scope of the tort is "a stricter

standard of knowledge." *Id.* The duty extends only to "a person in the profession of supplying

information for the guidance of others acts in an advisory capacity and is manifestly aware of the

use that the information will be put, and intends to supply it for that purpose." *Id.* at 124–25.

Donnelly's negligent misrepresentation claim fails because a pollster and a general

circulation newspaper reporting on the results of an election poll are not in the business or

profession of supplying information to a limited class of others who knowingly rely on the

information. The relationship between a newspaper and the public is fundamentally different from

the relationship between an accountant or attorney and his or her client. There is no "limited class

14

of persons" a newspaper contemplates will use the information the paper publishes. *Cf. Freeman v. Ernst & Young*, 516 N.W.2d 835, 838 (Iowa 1994). Indeed, it would be impossible for a newspaper to know how any one member of the public would use the information it reports because a newspaper does not act in "the guidance of others [ ] in an advisory capacity." *Id.* As a result, a newspaper, and the newspaper's pollster, cannot intend to supply information for any particular purpose because no singular particular purpose exists among the myriad readers. Because a newspaper and a pollster do not act as an advisor to a limited class of persons when it reports on the poll results of a national election, Defendants did not owe a duty to Donnelly. Because Donnelly has failed to plausibly allege Defendants owed him a duty, Alternative Count I is dismissed with prejudice.

### C.    Iowa Consumer Fraud Act

In Count II, Donnelly asserts a violation of the Iowa Consumer Fraud Act. The Act states:

> A person shall not engage in a practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise, or the solicitation of contributions for charitable purposes. For the purposes of this chapter, a claimant alleging an unfair practice, deception, fraud, false pretense, false promise, or misrepresentation must prove that the prohibited practice related to a material fact or facts.

Iowa Code § 714H.3(1). Donnelly's claim fails because publishing the results of a political opinion poll that matches the co-published methodology is not an unfair or deceptive practice. The Court notes that even if Donnelly did make out a prima facia case for violation of the Iowa Consumer Fraud Act as a result of Defendants' reporting, such a claim would face significant resistance from the First Amendment. However, because Donnelly fails to plead a prima facia case, the Court does not further address the threat such a claim would pose to free expression and a free press as

guaranteed by the First Amendment.

Iowa law defines an unfair practice as "an act or practice which causes substantial, unavoidable injury to consumers that is not outweighed by any consumer or competitive benefits which the practice produces." Iowa Code § 714H.2(9) (referencing the definition of unfair practice found in Iowa Code § 714.16(1)(i)). Publication of election polls which follow the co-published methodology is not an act which causes substantial and unavoidable injury to consumers. Donnelly alleges Defendants promised one product, "trustworthy, accurate news," and "knowingly or recklessly failed to deliver that product" by "blowing their biggest story of the year." ECF No. 36 at 33. Under Iowa law, "[a] course of conduct contrary to what an ordinary consumer would anticipate contributes to a finding of an unfair practice." *State ex rel. Miller v. Vertrue, Inc.*, 834 N.W.2d 12, 37 (Iowa 2013). Ordinary customers of the *Des Moines Register* would expect the paper to publish the Iowa Poll as it has done for decades. ECF No. 22 ¶ 80. Consumers would expect the poll to be conducted commensurate with the methodology accompanying the poll. Consumers would understand from the methodology statement, as well as the inherently uncertain nature of opinion polling, that polling is an inexact science which can yield errant results in prognosticating future election results.

Having failed to plausibly plead an intentionally poor methodological design, Donnelly's sole remaining allegation for how publication of the poll constitutes an unfair practice is the seeming inaccuracy of the poll when compared to the election results. Yet Donnelly cites to no law which establishes that mere inaccuracy of an opinion poll constitutes an unfair practice. Donnelly's assertion is also internally contradictory as such a standard would mean every poll cited favorably by Donnelly was similarly engaged in an unfair practice because they too published polls which did not accurately forecast the election outcome. ECF No. 22 ¶ 31.

"'Deception' means an act or practice that is likely to mislead a substantial number of

consumers as to a material fact or facts." Iowa Code § 714H.2(5). Deception therefore necessarily requires the false statement or material omission of a fact. Donnelly does not allege any misrepresentation with regard to either the methodology statement or the poll results itself. No factual information regarding how the poll was conducted was withheld from readers. The article fully described the poll results, the poll methodology, and provided additional analysis of the surprising nature of the results. *See* ECF No. 32-1; ECF No. 32-2; ECF No. 32-4. Publication of the Iowa Poll cannot have been deceptive because readers knew exactly how the poll was conducted and what results it yielded—readers were therefore informed of all material facts needed to judge the reliability of the poll. *Cf. Moeller v. Samsung Elecs. Am., Inc.*, 623 F.Supp.3d 978, 987 (S.D. Iowa 2022) (finding statements which give consumers a misleading impression regarding honoring a warranty were deceptive).

The Court does not address Defendants' additional arguments regarding Donnelly's failure to show Defendants' actions proximately caused an "ascertainable loss of money or property" as required by Iowa law. *See* Iowa Code § 714H.5(1). Because Donnelly fails to plausibly allege Defendants engaged in an unfair or deceptive practice, Count II is dismissed with prejudice.

### D. Professional Malpractice

To state a claim for professional malpractice in Iowa, a plaintiff must show 1) the existence of a relationship between the parties which gives rise to a duty; 2) the defendant breached that duty either through an act or a failure to act; 3) the alleged breach proximately caused the plaintiff's injury; and 4) damages resulted from the breach. *Ruden v. Jenk*, 543 N.W.2d 605, 610 (Iowa 1996). Because Donnelly fails to allege the necessary element of duty, the claim for professional malpractice necessarily fails.

Donnelly describes the duty he seeks to impose on Defendants as "the ordinary care of a journalist or pollster . . . to recognize the obvious problems with the Iowa Poll and not publish it

without additional investigation or verification." The nature of the relationship between newspapers and their readers, however, does not impose such a general duty. Donnelly fails to cite to any Iowa law imposing such a duty on newspapers, and courts generally find no such duty exists. *First Equity Corp. v. Standard & Poor's Corp.,* 869 F.2d 175 (2d Cir.1989) (finding a publisher of financial information not liable for negligent misrepresentation); *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1037 (9th Cir. 1991) (noting a publisher has "no duty to investigate the accuracy of the contents of the books it publishes" and even if a court were inclined to recognize such a duty "the gentle tug of the First Amendment and the values embodied therein would remind us of the social costs"); *De Bardeleben Marine Corp. v. United States*, 451 F.2d 140, 148 (5th Cir. 1971) ("If a newspaper prints incorrect information . . . they cannot be 'liable' to those of the general public who read their works absent some special relationship between writer and reader."). The justification for refusing to impose such a duty is clear, "the chilling effect of imposing a high duty of care on those in the business of news dissemination and making that duty run to a wide range of readers or TV viewers would have a chilling effect which is unacceptable under our Constitution." *Stancik v. CNBC*, 420 F.Supp.2d 800, 808 (N.D. Ohio 2006). Guided by the First Amendment and following the clear consensus of the law, the Court finds Defendants owed no such duty to Donnelly.

Donnelly's claim also fails because political opinion polls are predictive and inherently uncertain. Defendants here carried out a randomized survey and published the results along with a full explanation of the poll methodology. Donnelly's novel attempt to impose liability for news prediction is similar to *Brandt v. Weather Channel, Inc.* in which a plaintiff sought to hold a news channel liable for an inaccurate weather forecast. 42 F.Supp.2d 1344 (S.D. Fl. 1999). That court noted "to impose such a duty would be to chill the well established first amendment rights of the broadcasters." *Id.* at 1346. The court in *Brandt* further observed the litany of absurd suits which

could follow from imposing such a duty, such as construction workers suing when they pour concrete in reliance on a weather report forecasting no rain or commuters suing when they are stuck in traffic and late to work because the news reported there would be light traffic. *Id.* Finding for Donnelly here would permit similar absurdity. The Court declines to permit such absurdity and finds Defendants owed no such duty to Donnelly.

The Court does not address Defendants' arguments regarding Donnelly's failure to show Defendants breached the alleged duty of care. Because Donnelly fails to plausibly allege Defendants owed a duty of care, Count III is dismissed with prejudice.

### E.   Interference With the Right to Vote

Donnelly alleges Defendants' actions constitute "interference with the right to vote." ECF No. 22. ¶ 184. Defendants resist, arguing no such tort exists under Iowa law. ECF No. 32 at 45. Donnelly cites one case in support of this tort, *Lane v. Mitchell.* 153 Iowa 381 (Iowa 1911). This case dealt with judges in a precinct refusing to permit an individual to vote. *Id.* The court in *Lane* focused on the proper interpretation of the Iowa Code section governing voter eligibility. *Id.* The court held "the duties and powers conferred by this section on judges of election are ministerial, and not judicial." *Id.* This case makes no mention of a cognizable tort under Iowa law for interference with the right to vote. The case instead centered on the duties of election judges under the relevant Iowa Code. *Id.* Donnelley cites to no other Iowa law establishing such a tort. Because the asserted tortious interference with the right to vote is not a viable cause of action under Iowa law, Claim IV is dismissed.

Because Donnelly asserts no cognizable cause of action under Iowa law, Count IV is dismissed with prejudice.

### F.   Civil Conspiracy

The Court briefly addresses Donnelly's civil conspiracy claim. ECF No. 22 ¶¶ 192–98.

"Civil conspiracy is not in itself actionable; rather it is the acts causing injury undertaken in furtherance of the conspiracy [that] give rise to the action." *Wright v. Brooke Group Ltd.*, 652 N.W.2d 159, 172 (Iowa 2002) (alteration in original). As discussed above, Donnelly fails to adequately allege any underlying tort and therefore "the absence of any actionable wrong is fatal to the claim." *McDonnell v. Hesco Bastion, Inc.*, 781 F.Supp.3d 745, 757 (S.D. Iowa 2025). Count V is dismissed with prejudice.

## V. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendants Des Moines Register and Tribune Co., Inc. and Gannett Co., Inc.'s Motion to Dismiss, ECF No. 26, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants J. Ann Selzer and Selzer & Company's Motion to Dismiss, ECF No. 29, is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 6th day of November, 2025.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE

20

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF IOWA

DENNIS DONNELLY, on behalf of himself
and all others similarly situated,

                Plaintiff,

v.

DES MOINES REGISTER AND TRIBUNE
CO., INC., J. ANN SELZER, SELZER &
COMPANY, and GANNETT CO., INC.,

                Defendants,

**CIVIL NO.: 4:25-cv-00150-RGE-WPK**

**JUDGMENT IN A CIVIL CASE**

☐ **JURY VERDICT.**  This action came before the Court for trial by jury.  The issues have been tried and the jury has rendered its verdict.

☑ **DECISION BY COURT**.  This action came before the Court.  The issues have been considered and a decision has been rendered.

        **IT IS ORDERED AND ADJUDGED**:

Pursuant to Order [48], the case is dismissed. Judgment is entered in favor of the Defendants, Des Moines Register and Tribune Co., Inc., J. Ann Selzer, Selzer & Company, and Gannett Co., Inc., and against the Plaintiff.

Date:  November 6, 2025

                CLERK, U.S. DISTRICT COURT

                /s/  Kandy Sands
                _____

                By: Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| DENNIS DONNELLY, on behalf of himself and all others similarly situated,<br><br>          Plaintiff,<br><br>    v.<br><br>DES MOINES REGISTER AND TRIBUNE CO., INC.; J. ANN SELZER; SELZER & COMPANY; and GANNETT CO., INC.,<br><br>         Defendants. | Case No. 4:25-cv-00150-RGE-WPK |

**NOTICE OF APPEAL**

Notice is hereby given that Dennis Donnelly (putatively on behalf of himself and all others similarly situated), plaintiff in the above-named case, hereby appeals to the United States Court of Appeals for Eighth Circuit from the final judgment entered in this action on November 6, 2025 (ECF 49), which reflects the Court's orders on the motion for remand (ECF 47) and the motions to dismiss (ECF 48).

Robert R. Anderson
Iowa State Bar No. AT9021
P.O. Box 4
Atlantic, IA 50022
Phone (515) 382-1278
Email: Bobandersoniowan@gmail.com

/s/ Daniel R. Suhr
Daniel R. Suhr
Center for American Rights
1341 W. Fullerton Ave., Suite 170
Chicago, IL 60614
Email: dsuhr@americanrights.org

    December 5, 2025

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA

# Notice of Appeal Supplement

Case Name: _____ vs. _____

District Court Case Number: _____

Appeal Fee (605.00) Status:  Pd _____ IFP _____ Pending _____ Government Appeal _____

Counsel: Appointed _____ CJA _____ Retained _____ Pro Se _____ Pro Bono _____

*Reminder: CJA appointed counsel will need to complete their AUTH 24 form thru CJA eVoucher.

Appeal filed by: Counsel _____ Pro Se _____

Any reason why counsel should not be appointed: _____

Certificate of Appealability: Denied _____ Granted _____ Not Issue _____

Pending post Judgment motions: Yes _____ No _____

If so, type of motion(s) and docket entry number:

_____

High Public Interest Case: Yes _____ No _____

Simultaneous Opinion release Requested: Yes _____ No _____

Trial Held: Bench _____ Jury _____ No _____

Court Reporter: Yes _____ No _____

Reporter's Name: _____

Appealing: Order prior to final judgment ___ or final judgment _____

***File this form with the Notice of Appeal***