# EXHIBIT A

No. 25-3451

*In the*

# United States Court of Appeals

*for the*

# Eighth Circuit

Dennis Donnelly,

Plaintiff-Appellant,

vs.

Des Moines Register and Tribune Company, Inc.; Gannett Co., Inc.; J. Ann Selzer; Selzer & Company,

Defendants-Appellees.

APPEAL FROM THE U.S. DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
Case No. 4:25-cv-00150-RGE-WPK
Hon. Rebecca Goodgame Ebinger

## APPELLEES DES MOINES REGISTER & TRIBUNE COMPANY AND GANNETT CO., INC.'S RESPONSE BRIEF

NICHOLAS A. KLINEFELDT
DAVID YOSHIMURA
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309
Nick.Klinefeldt@FaegreDrinker.com
David.Yoshimura@FaegreDrinker.com
Phone: (515) 248-9000
*Counsel for Appellees Des Moines Register and Tribune Company, Inc. and Gannett Co., Inc.*

## SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

After the results of a political opinion poll published in *The Des Moines Register* did not align with the later results of the 2024 elections, Dennis Donnelly brought this class action lawsuit against the newspaper for "fake news." The district court ruled against Donnelly and properly dismissed the case. First, the district court denied Donnelly's motion to remand, concluding that he could not establish any exception to federal jurisdiction under the Class Action Fairness Act. Second, the district court dismissed Donnelly's substantive claims in their entirety, holding that they failed to satisfy First Amendment safeguards and the basic plausibility pleading standard.

Defendants-Appellees Des Moines Register & Tribune Co., Inc. and Gannett Co., Inc. jointly request to be heard at oral argument for 15 minutes.



Appellate Case: 25-3451 Page: 3 Date Filed: 04/10/2026 Entry ID: 5628030

## DEFENDANTS-APPELLEES' CORPORATE DISCLOSURE STATEMENTS

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eighth Circuit Local Rule 26.1A, Defendants-Appellees state as follows:

1. **Respondent Gannett Co., Inc.** does not have a parent corporation, and no publicly held corporation owns 10% or more of its stock. Effective November 18, 2025, Gannett Co., Inc. changed its legal name to USA TODAY Co., Inc.

2. **Respondent Des Moines Register & Tribune Company** is an indirect wholly owned subsidiary of USA TODAY Co., Inc. and is not publicly traded.



Appellate Case: 25-3451 Page: 4 Date Filed: 04/10/2026 Entry ID: 5628030

## TABLE OF CONTENTS

SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT ...............i
DEFENDANTS-APPELLEES' CORPORATE DISCLOSURE STATEMENTS ....ii
STATEMENT OF THE ISSUES.....................................................................................1
I. Did the district court correctly deny Donnelly's motion for remand where no exception to federal jurisdiction under the Class Action Fairness Act applies? ......................................................................................1
II. Did the district court correctly dismiss Donnelly's claims because he cannot satisfy the exacting requirements of the First Amendment?.......................................................................................1
III. Did the district court correctly dismiss Donnelly's claims because none states a plausible claim for relief? ..................................................1
STATEMENT OF THE CASE.....................................................................................2
A. The Iowa Poll ..........................................................................................2
B. Donnelly's Allegations and the District Court's Rulings. ................5
SUMMARY OF THE ARGUMENT ..........................................................................7
ARGUMENT ...............................................................................................................8
I. Statement of the Standard of Review. ...................................................8
II. The District Court Correctly Denied Donnelly's Motion for Remand..........................................................................................................8
A. The district court correctly denied the motion to remand because no statutory CAFA exception applies.................................9
1. Donnelly cannot satisfy the "principal injuries" prong of the local-controversy exception as a matter of law. .........9
a. The principal-injuries provision requires all putative class members to have sustained their principal injuries in the forum state. ..........................10
b. Donnelly's allegations confirm the national character of the case and inapplicability of the local-controversy exception. ......................................14
2. CAFA's home-state exception and discretionary exception do not apply because Donnelly's Petition alleges that Gannett is a "primary defendant." ...................15

a. All primary defendants must be citizens of Iowa. ....15

b. Gannett is a primary defendant under CAFA. ....17

c. Donnelly's pleading confirms that Gannett is a primary defendant. ....19

d. Donnelly's new arguments regarding different "approaches" to the primary-defendant inquiry are waived and unavailing. ....21

B. The Court may affirm on the independent, alternative basis that Donnelly is not entitled to jurisdictional discovery. ....23

III. The District Court Correctly Dismissed Donnelly's Claims Because They Violate the First Amendment. ....24

A. The First Amendment prohibits Donnelly's claims. ....26

1. Press Defendants' political campaign reporting is entitled to presumptive First Amendment protection from Donnelly's speech-based claims. ....26

2. Donnelly's proposal to create a First Amendment exception for "fake news" must be rejected. ....29

B. In the alternative, Donnelly's claims must be dismissed for failing to satisfy additional First Amendment principles. ....33

1. The district court correctly determined that the "actual malice" requirement forecloses Donnelly's claims. ....34

a. Donnelly misapprehends and fails to plead "reckless disregard." ....35

b. Donnelly's pleading is insufficient to plausibly allege actual malice. ....37

IV. The District Court Correctly Dismissed Donnelly's Claims on Their Merits Because None Asserts a Plausible Claim for Relief. ....41

A. Donnelly does not assert a plausible claim for fraudulent misrepresentation. ....42

1. Donnelly does not plead an actionable false representation. ....43

2. Donnelly's failure to plead additional elements of fraudulent misrepresentation are proper alternative bases to affirm. ....47




Appellate Case: 25-3451 Page: 6 Date Filed: 04/10/2026 Entry ID: 5628030

B. Donnelly does not assert a plausible claim for negligent misrepresentation. ....................................................................50

C. Donnelly does not assert a plausible claim for relief under the Iowa Consumer Fraud Act. .........................................................52

1. Donnelly failed to adequately allege an unfair or deceptive practice in violation of ICFA.................................53

2. Donnelly's ICFA claim fails to sufficiently plead additional necessary elements regarding materiality, connection to sale or advertisement, and injury...................56

D. Donnelly's professional malpractice claim fails because no cognizable duty exists. ..................................................................58

E. Donnelly's claim for "interference with the right to vote" is not recognized under Iowa law..........................................................60

F. Because Donnelly's substantive claims fail, his civil conspiracy claim fails as well. ...........................................................61

CONCLUSION ...........................................................................................................61

CERTIFICATE OF COMPLIANCE AND VIRUS SCANNING**Error! Bookmark not defined.**

CERTIFICATE OF SERVICE..................................... **Error! Bookmark not defined.**

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*281 Care Comm. v. Arneson*,
638 F.3d 621 (8th Cir. 2011) .......... *passim*

*281 Care Comm. v. Arneson*,
766 F.3d 774 (8th Cir. 2014) .......... *passim*

*Adam & Eve Jonesboro, LLC v. Perrin*,
933 F.3d 951 (8th Cir. 2019) .......... 11

*Albaugh v. The Reserve*,
930 N.W.2d 676 (Iowa 2019) .......... 53

*Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*,
949 F.3d 417 (8th Cir. 2020) .......... 42, 44

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 37, 41

*Atwood v. Peterson*,
936 F.3d 835 (8th Cir. 2019) .......... 8, 15

*Bass v. J.C. Penney Co., Inc.*,
880 N.W.2d 751 (Iowa 2016) .......... 44, 53

*Beck v. United States*,
125 F.4th 887 (8th Cir. 2025) .......... 8, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 37, 41, 42, 48

*Birmingham v. Fodor's Travel Pubs.*,
833 P.2d 70 (Haw. 1992) .......... 59, 60

*Bittner v. United States*,
598 U.S. 85 (2023) .......... 12

*BJC Health Sys. v. Columbia Cas. Co.*,
478 F.3d 908 (8th Cir. 2007) .......... 45

*Blessum v. Howard Cnty. Bd. of Supervisors*,
295 N.W.2d 836 (Iowa 1980)....................35

*Bose Corp. v. Consumers Union of U.S., Inc.*,
466 U.S. 485 (1984).................... 32, 35

*Brown v. Louisiana-Pacific Corp.*,
820 F.3d 339 (8th Cir. 2016)....................58

*Brunts v. Walmart, Inc.*,
68 F.4th 1091 (8th Cir. 2023)....................8

*Cantor Fitzgerald Inc. v. Lutnick*,
313 F.3d 704 (2d Cir. 2002)....................13

*Carr v. Bankers Trust Co.*,
546 N.W.2d 901 (Iowa 1996)....................34

*Cheapside Mins., Ltd. v. Devon Energy Prod. Co., L.P.*,
94 F.4th 492 (5th Cir. 2024)....................*passim*

*Chicago Ins. Co. v. Archdiocese of St. Louis*,
740 F.3d 1197 (8th Cir. 2014)....................22

*Citizens United v. FEC*,
558 U.S. 310 (2010).................... 26, 33

*City of Plantation Police Officers Pension Fund v. Meredith Corp.*,
16 F.4th 553 (8th Cir. 2021)....................43

*Collins v. Yellen*,
594 U.S. 220 (2021)....................12

*Comm'r v. Soliman*,
506 U.S. 168 (1993)....................11

*Crest Constr. II, Inc. v. Doe*,
660 F.3d 346 (8th Cir. 2011)....................8

*Desnick v. ABC*,
233 F.3d 514 (7th Cir. 2000)....................36

*Dever v. Hentzen Coatings, Inc.*,
380 F.3d 1070 (8th Cir. 2004)....................24

*Dierickx v. DreamDirt Farm & Ranch Real Estate, LLC*,
30 N.W.3d 744 (Iowa Ct. App. 2025) ....................52

*Dinsdale Constr., LLC v. Lumber Specialties, Ltd.*,
888 N.W.2d 644 (Iowa 2016).................... 50, 51

*Earley v. GateHouse Media Pa. Holdings, Inc.*,
No. 3:12-1886, 2013 WL 5466149 (M.D. Pa. Sept. 30, 2013) ....................36

*Eu v. San Francisco Cnty. Democratic Cent. Comm.*,
489 U.S. 214 (1989) ....................26

*Evans v. Walter Indus., Inc.*,
449 F.3d 1159 (11th Cir. 2006)....................14

*F.T.C. v. Cyberspace.Com LLC*,
453 F.3d 1196 (9th Cir. 2006)....................56

*Fairbanks v. Roller*,
314 F.Supp.3d 85 (D.D.C. 2018) ....................39

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013) ....................56

*Franklin Prescriptions, Inc. v. New York Times Co.*,
424 F.3d 336 (3d Cir. 2005) ....................38

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir. 1995) ....................56

*Gardner v. Rockwool Indus., Inc.*,
No. 09-6082-CV, 2009 WL 2902573 (W.D. Mo. Sept. 2, 2009) ....................20

*Garrison v. Louisiana*,
379 U.S. 64 (1964) .................... 26, 36

*Gibson v. ITT Hartford Ins. Co.*,
621 N.W.2d 388 (Iowa 2001)....................1, 42, 47

*Glick v. W. Power Sports, Inc.*,
944 F.3d 714 (8th Cir. 2019)....................55

*Green v. SuperShuttle Int'l, Inc.*,
No. 09-2129, 2010 WL 419964 (D. Minn. Jan. 29, 2010) ....................18

*Grimmett v. Freeman*,
59 F.4th 689 (4th Cir. 2023) .......... 30

*Hanberry v. Hearst Corp.*,
81 Cal. Rptr. 519 (Cal. Ct. App. 1969) .......... 60

*Hargis v. Access Cap. Funding, LLC*,
674 F.3d 783 (8th Cir.2012) .......... 19

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
491 U.S. 657 (1989) .......... 34, 35, 39, 41

*Hohn v. BNSF Ry. Co.*,
707 F.3d 995 (8th Cir. 2013) .......... 8, 24

*Hollander v. CBS News, Inc.*,
No. 16 Civ. 6624, 2017 WL 1957485 (S.D.NY. 2017) .......... 33

*Hollinger v. Home State Mut. Ins. Co.*,
654 F.3d 564 (5th Cir. 2011) .......... 14

*Howard v. Antilla*,
294 F.3d 244 (1st Cir. 2002) .......... 35

*Hunter v. City of Montgomery, Alabama*,
859 F.3d 1329 (11th Cir. 2017) .......... 17, 18, 22

*Hustler Mag., Inc. v. Falwell*,
485 U.S. 46 (1988) .......... 32, 34

*Illinois ex. rel. Madigan v. Telemarketing Assocs.*,
538 U.S. 600 (2003) .......... 30

*Int'l Milling Co. v. Gisch*,
137 N.W.2d 625 (Iowa 1965) .......... 47

*Jensen v. Sattler*,
696 N.W.2d 582 (Iowa 2005) .......... 51

*Johnston v. United States*,
534 F.3d 958 (8th Cir. 2008) .......... 23

*Lane v. Mitchell*,
133 N.W. 381 (Iowa 1911) .......... 1, 60



Appellate Case: 25-3451 Page: 11 Date Filed: 04/10/2026 Entry ID: 5628030

*Lee v. TMZ Prods. Inc.*,
710 F. App'x 551 (3d Cir. 2017) .......... 40

*Leflar v. Target Corp.*,
57 F.4th 600 (8th Cir. 2023) .......... 8

*Levesque v. Doocy*,
557 F. Supp. 2d 157 (D. Me. 2008) .......... 39

*In re Livent, Inc. Noteholders Sec. Litig.*,
151 F. Supp. 2d 371 (S.D.N.Y. 2001) .......... 49

*Madison v. ADT, L.L.C.*,
11 F.4th 325 (5th Cir. 2021) .......... 22

*Masson v. New Yorker Magazine, Inc.*,
501 U.S. 496 (1991) .......... 39

*Mayfield v. NASCAR, Inc.*,
674 F.3d 369 (4th Cir. 2012) .......... 37

*McCarney v. Des Moines Register & Tribune Co.*,
239 N.W.2d 152 (Iowa 1976) .......... *passim*

*McDonald v. Wise*,
769 F.3d 1202 (10th Cir. 2014) .......... 40

*McDougal v. Fox News Network*,
489 F. Supp. 3d 174 (S.D.N.Y. 2020) .......... 38

*McFarlane v. Sheridan Square Press, Inc.*,
91 F.3d 1501 (D.C. Cir. 1996) .......... 36

*Miller v. Redwood Toxicology Lab., Inc.*,
688 F.3d 928 (8th Cir. 2012) .......... 2

*Minn. Citizens Concerned for Life, Inc. v. Swanson*,
692 F.3d 864 (8th Cir. 2012) .......... 26

*Mitec Partners, LLC v. U.S. Bank Nat'l Ass'n*,
605 F.3d 617 (8th Cir. 2010) .......... 52

*Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*,
951 F.3d 952 (8th Cir. 2020) .......... 37, 40

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964) .......................................................................................26, 34, 35

*Nicholson v. Prime Tanning Corp.*,
No. 09-6083-CV, 2009 WL 2900042 (W.D. Mo. Sept. 3, 2009) ................................18

*Northshore Min. Co. v. Sec'y of Lab.*,
709 F.3d 706 (8th Cir. 2013) .............................................................................................11

*OAO Alfa Bank v. Ctr. for Pub. Integrity*,
387 F. Supp. 2d 20 (D.D.C. 2005) ....................................................................................39

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc.*,
651 F.3d 857 (8th Cir. 2011) .............................................................................................13

*Peoples Bank & Trust Co. of Mountain Home v. Globe Int'l Publishing, Inc.*,
978 F.2d 1065 (8th Cir. 1992) ................................................................................... 46, 47

*Pitts v. Farm Bureau Life Ins. Co.*,
818 N.W.2d 91 (Iowa 2012) ...............................................................................................51

*Putman v. Walther*,
973 N.W.2d 857 (Iowa 2022) .............................................................................................49

*Raskas v. Johnson & Johnson*,
719 F.3d 884 (8th Cir. 2013) .............................................................................................19

*Riley v. St. Louis Cnty.*,
153 F.3d 627 (8th Cir. 1998) .............................................................................................54

*Sain v. Cedar Rapids Cmty. Sch. Dist.*,
626 N.W.2d 115 (Iowa 2001) ..................................................................................1, 50, 52

*Schmitt v. Rebertus*,
148 F.4th 958 (8th Cir. 2025) .............................................................................................21

*Scott v. Roberts*,
612 F.3d 1279 (11th Cir. 2010) .................................................................................. 45, 47

*Selective Ins. Co. of Am. v. Heritage Constr. Cos., LLC*,
165 F.4th 1132 (8th Cir. 2026) ..........................................................................................47

*Singh v. Am. Honda Fin. Corp.*,
925 F.3d 1053 (9th Cir. 2019) .....................................................................................16, 17, 18

*Smith v. Marcus & Millichap, Inc.*,
991 F.3d 1145 (11th Cir. 2021)........................................................................16, 20

*Snyder v. Phelps*,
562 U.S. 443 (2011)........................................................................26, 27, 34

*Spreitzer v. Hawkeye State Bank*,
779 N.W.2d 726 (Iowa 2009)........................................................................47

*St. Amant v. Thompson*,
390 U.S. 727 (1968)........................................................................35, 36

*State ex rel. Miller v. Cutty's Des Moines Camping Club, Inc.*,
694 N.W.2d 518 (Iowa 2005)........................................................................53, 57

*State ex rel. Miller v. Hydro Mag, Ltd.*,
436 N.W.2d 617 (Iowa 1989)........................................................................58

*State ex rel. Miller v. Vertrue, Inc.*,
834 N.W.2d 12 (Iowa 2003)........................................................................53, 54, 55, 56

*State v. Cusick*,
84 N.W.2d 554 (Iowa 1957)........................................................................57

*In re Stratasys Ltd. S'Holder Sec. Litig.*,
864 F.3d 879 (8th Cir. 2017)........................................................................43

*Sudholdt v. Country Mut. Ins. Co.*,
83 F.4th 621 (7th Cir. 2023)........................................................................19, 22

*In re SuperValu, Inc.*,
925 F.3d 955 (8th Cir. 2019)........................................................................41, 42, 55

*Susan B. Anthony List v. Driehaus*,
814 F.3d 466 (6th Cir. 2016)........................................................................30

*Tavoulareas v. Piro*,
817 F.2d 762 (D.C. Cir. 1987)........................................................................39

*Tholen v. Assist Am., Inc.*,
970 F.3d 979 (8th Cir. 2020)........................................................................36

*Thompson Truck & Trailer, Inc. v. United States*,
901 F.3d 951 (8th Cir. 2018)........................................................................17, 18

*Time, Inc. v. Hill*,
385 U.S. 374 (1967) ....................................................................................32

*Tri-Plex Tech. Servs., Ltd. v. Jon-Don, LLC*,
241 N.E.3d 454 (Ill. 2024)...........................................................................58

*Triestman v. Turkheimer*,
No. 19-CV-03081, 2020 WL 9594315 (N.D. Ill. Aug. 4, 2020) ................................39

*Tuttle v. Lorillard Tobacco Co.*,
377 F.3d 917 (8th Cir. 2004) .........................................................................55

*UMB Bank, N.A. v. Guerin*,
89 F.4th 1047 (8th Cir. 2024)............................................................................8

*United States v. Alvarez*,
567 U.S. 709 (2012) ...........................................................................*passim*

*United States v. Playboy Ent. Grp.*,
529 U.S. 803 (2000) ....................................................................................33

*United States v. Stevens*,
559 U.S. 460 (2010) .......................................................................29, 30, 33

*Van Sickle Constr. Co. v. Wachovia Comm. Mortg., Inc.*,
783 N.W.2d 684 (Iowa 2010)........................................................................51

*Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*,
646 F.3d 589 (8th Cir. 2011) ................................................................1, 10, 24

*Vodenichar v. Halcon Energy Props., Inc.*,
733 F.3d 497 (3d Cir. 2013) ..................................................................*passim*

*Walker v. Pulitzer Publ'g Co.*,
394 F.2d 800 (8th Cir. 1968) .........................................................................34

*Washington League for Increased Transparency & Ethics v. Fox Corp.*,
No. 81512-1-I, 2021 WL 3910574 (Wash. Ct. App. Aug. 30, 2021) ............27, 28, 33

*Watson v. City of Allen, Tx.*,
821 F.3d 634 (5th Cir. 2016) .........................................................................22

*Westerfeld v. Indep. Processing, LLC*,
621 F.3d 819 (8th Cir. 2010) ...................................................................... 9, 15

*Wright v. Brooke Grp. Ltd.*,
652 N.W.2d 159 (Iowa 2002) .......... 1, 61

**Statutes, Rules & Regulations**

28 U.S.C. § 1332 .......... *passim*

Federal Rule of Civil Procedure 9 .......... 42, 44

Federal Rule of Civil Procedure 12 .......... 24, 25, 54

Federal Rule of Civil Procedure 56 .......... 23

Iowa Code § 714.16 .......... 53

Iowa Code § 714H.2 .......... 1, 53, 57

Iowa Code § 714H.3 .......... 38, 55, 57

Iowa Code § 714H.4 .......... 57

Iowa Code § 714H.5 .......... 58

**Other Authorities**

U.S. Const. amend. I .......... *passim*

*Primary*, Oxford English Dictionary Online .......... 17

*Principal*, Black's Law Dictionary (8th ed. 2004) .......... 11

*Principal*, Merriam-Webster's Third New Int'l Dictionary (11th ed. 2002) .......... 11

Restatement (Second) of Torts § 865 .......... 61

S. Rep. No. 109-14 (2005) .......... 13, 14

## STATEMENT OF THE ISSUES

**I. Did the district court correctly deny Donnelly's motion for remand where no exception to federal jurisdiction under the Class Action Fairness Act applies?**

28 U.S.C. § 1332

*Cheapside Mins., Ltd. v. Devon Energy Prod. Co., L.P.*, 94 F.4th 492, 500 (5th Cir. 2024)

*Vodenichar v. Halcon Energy Props., Inc.*, 733 F.3d 497, 505 (3d Cir. 2013)

*Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 598 (8th Cir. 2011)

**II. Did the district court correctly dismiss Donnelly's claims because he cannot satisfy the exacting requirements of the First Amendment?**

U.S. Const. amend. I

*281 Care Comm. v. Arneson*, 766 F.3d 774 (8th Cir. 2014) ("*281 Care Comm. II*")

*United States v. Alvarez*, 567 U.S. 709 (2012)

**III. Did the district court correctly dismiss Donnelly's claims because none states a plausible claim for relief?**

*Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388 (Iowa 2001)

*Sain v. Cedar Rapids Cmty. Sch. Dist.*, 626 N.W.2d 115, 124 (Iowa 2001)

*Lane v. Mitchell*, 133 N.W. 381 (Iowa 1911)

*Wright v. Brooke Grp. Ltd.*, 652 N.W.2d 159, 172 (Iowa 2002)

Iowa Code §§ 714H.2-.5

## STATEMENT OF THE CASE

### A. The Iowa Poll

*The Des Moines Register* is a nationally recognized Iowa-based newspaper published by Des Moines Register and Tribune Company and Gannett Co., Inc. (n/k/a USA TODAY Co., Inc.) (collectively "Press Defendants"). (App. 13; R.Doc. 22, at ¶9.)[1] As it has done for decades, *The Register* closely reported on the political races leading up to the 2024 elections, including the publication of the results of the Iowa Poll in its online and print newspapers. The Iowa Poll, developed and conducted by J. Ann Selzer and her company Selzer & Co., polled likely voters in Iowa regarding the presidential and federal congressional races. (App. 15-16; R.Doc. 22, at ¶¶17-24.)

On November 2, 2024, *The Register* published an article in its digital edition that reported the October 2024 Iowa Poll results for the presidential race. (R.Doc. 32-1.)[2] The poll results estimated that then-Vice President Harris was leading President Trump by three points, 47% to 44%, with a 3.4% margin of error. (*Id.* at 3-4.) The article stated,

---

[1] "App." refers to the Joint Appendix. "Add." refers to Donnelly's Addendum. "Op.Br." refers to Donnelly's Opening Brief. "R.Doc." citations refer to the district court's ECF enumerated docket entry.

[2] Donnelly's Amended Complaint incorporates by reference *The Register*'s articles reporting on the Iowa Poll. (*See, e.g.*, App. 12-13, 19; R.Doc. 22, at ¶¶5, 7, 40, 43.) The district court record reflects the principal articles and attachments from *The Register* reporting on the results of the Iowa Poll. (R.Doc. 32-1, 32-2, 32-3, 32-4, 32-5, 32-6.) This Court should take judicial notice of these documents, as did the district court, because they are "necessarily embraced by the pleadings," are "incorporated by reference," and are "integral to" Donnelly's claims. *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 & n.3 (8th Cir. 2012).

however, that a Harris victory would be a "shocking development." (*Id.* at 2.) The article noted that a "greater share of [President Trump's] supporters than [Harris's] say they are extremely or very enthusiastic about their pick" and that only "a small universe of people" who previously supported President Trump indicated they may vote for another candidate. (*Id.* at 6, 13.) It provided the following description of the Iowa Poll:

> **About the Iowa Poll**
>
> The Iowa Poll, conducted October 28-31, 2024, for *The Des Moines Register* and Mediacom by Selzer & Co. of Des Moines, is based on telephone interviews with 808 Iowans ages 18 or older who say they will definitely vote or have already voted in the 2024 general election for president and other offices.
>
> Interviewers with Quantel Research contacted 1,038 Iowa adults with randomly selected landline and cell phone numbers supplied by Dynata. Interviews were administered in English. Responses were adjusted by age, sex, and congressional district to reflect the general population based on recent census data.
>
> Questions based on the sample of 808 Iowa likely voters have a maximum margin of error of plus or minus 3.4 percentage points. This means that if this survey were repeated using the same questions and the same methodology, 19 times out of 20, the findings would not vary from the true population value by more than plus or minus 3.4 percentage points. Results based on smaller samples of respondents—such as by gender or age—have a larger margin of error.

(*Id.* at 14-15.)

The article included the poll questionnaire, which identified each of the eight presidential polling questions and listed responses for each of the polling rounds in October 2024, September 2024, June 2024, February 2024, March 2023, and November 2021. (*See* R.Doc. 32-2.) It reflected that President Trump led former President Biden

by 18 points in June 2024 polling, but that President Trump's lead had decreased to 4 points when polling was repeated in September 2024 following Harris's nomination. (*Id.* at 3.) The questionnaire contained methodological details, including the sample size and margin of error for each question each time it was asked. (*See id.*)

On November 3, 2024, *The Register* published an article focusing on congressional races in its digital edition and two articles about the Iowa Poll in its print edition. (*See* R.Docs. 32-3 through 32-6.) They contained the same "About the Iowa Poll" paragraphs recited above. (R.Doc. 32-3, at 4; 32-4, at 11; 32-5, at 6-7.) Regarding the congressional races, the poll results estimated that voters were "virtually tie[d] on preferring a Democrat or a Republican candidate for Congress." (R.Doc. 32-4, at 3.) The results showed respondents in the first congressional district preferred the Democratic candidate over the Republican candidate by 16 points, "the largest in the district in any Iowa Poll this year." (*Id.* at 6.) Despite poll results suggesting a 16-point differential, the article noted that "[e]lection forecasters rate the race as a toss-up." (*Id.*) The digital article regarding the congressional races provided the poll questionnaire with methodological details. (*Id.* at 11-12; R.Doc. 32-5.) This questionnaire showed the Republican candidate in Iowa's first congressional district ("CD1") for the U.S. House of Representatives losing ground among poll respondents between February 2024 and October 2024. (R.Doc. 32-5, at 5.)

On November 5, 2024, President Trump won the presidential election in Iowa, and the Republican candidate for U.S. House in the first congressional district won re-

election. (App. 19-20; R.Doc. 22, at ¶¶42, 47.) Dennis Donnelly, a subscriber to *The Register*, thereafter initiated this suit.

### B. Donnelly's Allegations and the District Court's Rulings.

Donnelly pleaded claims under Iowa law for (1) fraudulent misrepresentation; (2) negligent misrepresentation; (3) violation of the Iowa Consumer Fraud Act ("ICFA"); (4) professional malpractice; (5) interference with the right to vote; and (6) civil conspiracy. (*See* App. 35-48; R.Doc. 22, at 25-38.) He brought these claims on behalf of himself and a putative nationwide class of "[a]ll digital and print subscribers to the Sunday edition of the Des Moines Register as of November 3, 2024." (App. 34; R.Doc. 22, at ¶117.)

Donnelly's operative complaint is premised on the assertion that the Iowa Poll "miss[ed] the final [election] result" by so much that it must have been either "intentionally fraudulent or recklessly irresponsible." (App. 14-15, 23; R.Doc. 22 at ¶¶16-17, 61.) He alleged that Defendants "designed the poll . . . in a way that the methodology resulted in a radically flawed result." (App. 35; R.Doc. 22, at ¶121.) Donnelly claimed he was provided a "fundamentally flawed product" and that he was deprived of the "value" of his subscription to *The Register*. (App. 12-13, 40, 45; R.Doc. 22, at ¶¶7, 157, 181.) Donnelly did not identify or allege any specific issue with the poll methodology; he merely claimed the results were inaccurate. (*See id.*) Nor did he allege any other dissatisfaction with his subscription to *The Register* than the Iowa Poll results. (*Id.*)

Donnelly's pleading contained many self-contradictory allegations. On the one hand, Donnelly alleged that Selzer has a "track record" of "misses" in previous election cycles, some of which were "breath-taking." (App. 15; R.Doc. 22, at ¶¶18-20.) On the other hand, Donnelly alleged that the Iowa Poll has a "histor[y of] accuracy" and acknowledged that Selzer used the same methodology in 2024 that she used in previous election cycles. (App. 27, 38; R.Doc. 22, at ¶¶83, 138.) Donnelly alleged the poll was on its face "an obvious outlier compared to other publicly available polling," yet he also alleged that he was nevertheless deceived by it. (App. 19; R.Doc. 22, at ¶38.)

Gannett removed this case in April 2025 pursuant to the Class Action Fairness Act ("CAFA"). *See* 28 U.S.C. § 1332(d). (R.Doc. 1.) Donnelly filed a motion for remand, alleging removal was untimely. (R.Doc. 21-1, at 4.) Defendants resisted Donnelly's motion for remand and moved to dismiss. (R.Doc. 24, 26) The district court denied Donnelly's motion to remand. (App. 52; R.Doc. 47, at 1, Add. 2.) Shortly after, the district court rejected Donnelly's claims in their entirety, dismissing the case with prejudice. (App. 81; R.Doc. 48, at 20, Add. 31.) This appeal followed.

## SUMMARY OF THE ARGUMENT

The district court's decisions were correct and straightforward. They should be affirmed in their entirety.

The district court correctly denied Donnelly's motion for remand, reasoning that Gannett's removal was proper and that Donnelly cannot establish any exception to CAFA as a matter of law, irrespective of the outcome of any possible jurisdictional discovery.

The district court also correctly dismissed Donnelly's lawsuit on constitutional and state-law grounds. On the constitutional side, Donnelly asks the Court to ignore the First Amendment's robust protection of core political speech by creating a new category of unprotected speech: "fake news." This is unprecedented and unconstitutional. Press Defendants' political campaign reporting is entitled to presumptive protection under the First Amendment, and that protection does not simply evaporate when a plaintiff labels speech he does not like as "fraud." Even if the First Amendment did not categorically bar Donnelly's claims, the district court still properly dismissed them for failing to satisfy the additional constitutional requirements of provable falsity and actual malice. On the state-law side, the district court correctly ruled that Donnelly's allegations failed to state a plausible claim for relief under the applicable state law.

Accordingly, this Court should affirm.

## ARGUMENT

### I. Statement of the Standard of Review.

This Court "review[s] *de novo* the denial of a motion to remand to state court under CAFA." *Atwood v. Peterson*, 936 F.3d 835, 839 (8th Cir. 2019). It "typically review[s] the denial of discovery for gross abuse of discretion." *Beck v. United States*, 125 F.4th 887, 889 (8th Cir. 2025).

The Court "review[s] the grant of a motion to dismiss *de novo*, affirming 'if the complaint fails to allege facts sufficient to state a claim to relief that is plausible on its face.'" *UMB Bank, N.A. v. Guerin*, 89 F.4th 1047, 1051 (8th Cir. 2024) (quoting *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011)). The Court may affirm "on any basis supported by the record." *Hohn v. BNSF Ry. Co.*, 707 F.3d 995, 1000 (8th Cir. 2013).

### II. The District Court Correctly Denied Donnelly's Motion for Remand.

Donnelly does not dispute that the requirements for CAFA jurisdiction are met in this case: "1) minimum diversity exists, 2) the proposed class has at least 100 members, and 3) there is more than $5 million in controversy." *Brunts v. Walmart, Inc.*, 68 F.4th 1091, 1093-94 (8th Cir. 2023) (citing 28 U.S.C. § 1332). Therefore, Gannett's removal and the district court's exercise of jurisdiction over the case were proper. *Id.*; *Leflar v. Target Corp.*, 57 F.4th 600, 603 (8th Cir. 2023).

Nevertheless, Donnelly claims that the case falls within an exception to CAFA and that hypothetical discovery into the citizenship of putative class members might

support his position. He is wrong for at least two reasons. *First*, no CAFA exception can apply as a matter of law, and the proposed discovery is futile. *Second*, Donnelly's request for discovery was procedurally improper and speculative. The district court's denial of Donnelly's motion to remand should be affirmed.

### A. The district court correctly denied the motion to remand because no statutory CAFA exception applies.

Because "CAFA's initial jurisdictional requirements have been established . . . the burden shifts to the party seeking remand to establish that one of CAFA's express jurisdictional exceptions applies." *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010). As this Court has explained, "[t]he language and structure of CAFA . . . indicate[] that Congress contemplated broad federal court jurisdiction with only narrow exceptions." *Id.* Because the plaintiff bears the burden of proof, courts "resolve any doubt about the applicability of CAFA's" exceptions "against . . . the party who seeks remand." *Id.* at 823.

Donnelly claims three of CAFA's narrow exceptions are at issue in this case: (1) the local-controversy exception; (2) the home-state exception; and (3) the discretionary exception. *See* 28 U.S.C. §§ 1332(d)(3), (d)(4)(A), (d)(4)(B). As the district court held, Donnelly cannot carry his burden of proof on any of them.

#### 1. Donnelly cannot satisfy the "principal injuries" prong of the local-controversy exception as a matter of law.

The local-controversy exception provides that a court "shall decline to exercise jurisdiction" if a plaintiff can prove: (1) at least two-thirds of the putative class are

citizens of the forum state (the "citizenship prong"); (2) at least one defendant whose actions form a significant basis for the claims must be a citizen of the forum state; (3) the principal injuries occurred in the forum state (the "principal-injuries prong"); *and* (4) there has been no class action asserting "the same or similar factual allegations against any of the defendants on behalf of the same or other persons" filed within the last three years. *Id.* § 1332(d)(4)(A).

Donnelly's preoccupation with the citizenship prong—including his request for related jurisdictional discovery—is a red herring. As confirmed by the statutory language, statutory structure, congressional intent, persuasive circuit authority, and Donnelly's own allegations, Donnelly cannot establish the principal-injuries prong as a matter of law with or without discovery as to citizenship. "Additional jurisdictional discovery is not needed if the 'facts necessary to resolv[e] the jurisdictional inquiry' are known and undisputed." *See Beck*, 125 F.4th at 892 (quoting *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 598 (8th Cir. 2011)). Therefore, the district court rightly denied remand and denied jurisdictional discovery. This Court should affirm.

**a. The principal-injuries provision requires all putative class members to have sustained their principal injuries in the forum state.**

The statutory text of the local-controversy exception requires Donnelly to prove that the "principal injuries resulting from the alleged conduct or any related conduct of

each defendant were incurred in the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(A)(i)(III).

As the Fifth Circuit recently explained following its textual analysis of the statute, the term "principal"[3] qualifies the *type*—not the *quantity*—of the injuries, and it "require[s] that *all* plaintiffs sustain their principal injuries in the forum state and nowhere else." *Cheapside Mins., Ltd. v. Devon Energy Prod. Co., L.P.*, 94 F.4th 492, 499-501 (5th Cir. 2024). This is because "CAFA ties the 'principal injuries' sustained to the *entire* class, not just a subset of it," and the principal-injuries prong contains "no exception for cases in which *most* plaintiffs sustain the principal injury in the forum state but some do not." *Id.*

The provision's inclusion in the larger context of CAFA also supports this interpretation. "[T]he placement of a provision in a particular subchapter, for example, suggests that its terms should be interpreted consistently with its context." *Northshore Min. Co. v. Sec'y of Lab.*, 709 F.3d 706, 710 (8th Cir. 2013). And "when Congress includes particular language in one section of a statute but omits it in another section of the same

[3] CAFA does not statutorily define the term "principal," but its ordinary meaning is clear. Black's Law Dictionary defines "principal" as "[c]hief; primary; most important." *See Principal*, Black's Law Dictionary (8th ed. 2004); *see also Principal*, Merriam-Webster's Third New Int'l Dictionary (11th ed. 2002) ("most important, consequential, or influential . . . relegating comparable matters, items, or individuals to secondary rank"). The U.S. Supreme Court and this Court apply the term "principal" consistently with these definitions. *Comm'r v. Soliman*, 506 U.S. 168, 174 (1993); *Adam & Eve Jonesboro, LLC v. Perrin*, 933 F.3d 951, 958 (8th Cir. 2019) (explaining "the ordinary meaning of principal business purpose is not vague" because "principal means chief or main").



Appellate Case: 25-3451 Page: 27 Date Filed: 04/10/2026 Entry ID: 5628030

Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Collins v. Yellen*, 594 U.S. 220, 248 (2021).

Here, in other CAFA provisions, Congress expressly identified circumstances in which fewer than all plaintiffs must meet certain requirements. *See, e.g.*, 28 U.S.C. § 1332(d)(4)(A)(i)(I). In fact, the first prong of the local-controversy exception itself requires "greater than two-thirds of members." *Id.* "But Congress did not enumerate the proportion of plaintiffs necessary under the nearby principal injuries prong." *Cheapside*, 94 F.4th at 501.

Likewise, another CAFA exception relates only to claims "that allegedly resulted in injuries in that State *or in States contiguous to that State*." *Id.* (quoting 28 U.S.C. § 1332(d)(11)(B)(ii)(I)). Therefore, Congress knew how to permit injuries in other states to satisfy a CAFA exception but chose not to do so for the local-controversy exception. "When Congress includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning[.]" *Bittner v. United States*, 598 U.S. 85, 94 (2023). Here, the difference in meaning is clear: principal injuries must be "incurred in the State in which the action was originally filed," not in other States. *Compare* 28 U.S.C. § 1332(d)(4)(A)(i)(III), *with id.* § 1332(d)(11)(B)(ii)(I).

The district court agreed with the Fifth Circuit's textualist approach, and Donnelly does not contest the district court's holding that "the principal injury alleged in the complaint occurred in all fifty states." (App. 59; R.Doc. 47, at 8, Add. 9; *see* Op.Br.

22-28.) There is no dispute that proposed class members incurred their injuries in the various states where they reside. *See, e.g.*, *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 710 (2d Cir. 2002) ("[When an] injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." (citation modified)). (*See* Op.Br. 25, 28 (acknowledging injuries occurred in other states).)

Instead, Donnelly proposes a new, atextual interpretation of CAFA's local-controversy exception that would require the "principal injuries" to merely be "concentrated in" the forum state. (*Cf.* Op.Br. 25 & n.10.) Donnelly does not now, and never has, advanced a textualist basis for his interpretation. Rather, he concedes that his interpretive "concepts" are *not* found in the text but are "drawn from the legislative history." (Op.Br. 25 n.10.) But this Court is clear that legislative history cannot be considered unless the statutory text is ambiguous. *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc.*, 651 F.3d 857, 863 (8th Cir. 2011). And as the Fifth Circuit correctly determined, the text is not ambiguous. C*heapside*, 94 F.4th at 499.

However, even if the Court does look to the legislative history, the record reflects commentary directly contradicting Donnelly's argument: "[I]f the defendants engaged in conduct that could be alleged to have injured consumers throughout the country or broadly throughout several states, the case *would not qualify* for this exception, even if it were brought only as a single-state class action." *See* S. Rep. No. 109-14, at 40 (2005) (emphasis added).

In short, if Congress had intended the local-controversy exception to apply in cases where only *most* of the principal injuries occurred in the forum state while some injuries occurred in other states, it would have said so. It did not. The district court properly applied the statute's plain language consistent with the Fifth Circuit's interpretation. *See Cheapside*, 94 F.4th at 501. This Court should do the same.

#### b. Donnelly's allegations confirm the national character of the case and inapplicability of the local-controversy exception.

Donnelly's allegations confirm the national character of the controversy, further supporting the district court's conclusion that the local-controversy exception does not apply. The exception is, to the contrary, for a "narrow category of truly localized controversies . . . that uniquely affect[] a particular locality *to the exclusion of all others*." *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 570 (5th Cir. 2011) (emphasis added); *accord Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006); S. Rep. No. 109-14, at 38.

Donnelly's characterization of his lawsuit as a "classic local dispute" is not credible and is inconsistent with his own pleadings and Opening Brief. (*Cf.* Op.Br. 28.) He purports to bring a nationwide class action on behalf of *all* subscribers to *The Register* and does not dispute that subscribers live in all fifty states. (R.Doc. 1-1, at ¶115; R.Doc. 24-7, at ¶4.) He further argues on appeal that Defendants "injected 'stunning, shocking, surprising' information *of national impact* in the last 72-hours of the race." (Op.Br. 43

(emphasis added).) As Plaintiff's claims and arguments make clear, this case is not a purely local affair.

The local-controversy exception does not apply here nor divest the district court of jurisdiction. *See Atwood*, 936 F.3d at 841 & n.5. Any doubts about its applicability must be construed in favor of affirming the district court's ruling in this case. *Westerfeld*, 621 F.3d at 823; *Cheapside*, 94 F.4th at 501 ("[O]ur interpretation of the local controversy exception complies with the requirement that we construe the exception narrowly.").

The statute's plain text, its nearby statutory provisions, its legislative history, persuasive authority from this Court's sister circuits, and Donnelly's own allegations all confirm that the local-controversy exception does not and cannot apply as a matter of law.

#### 2. CAFA's home-state exception and discretionary exception do not apply because Donnelly's Petition alleges that Gannett is a "primary defendant."

Donnelly cannot establish the home-state exception or the discretionary exception because both require that all primary defendants be citizens of Iowa. That is not the case here.

##### a. All primary defendants must be citizens of Iowa.

The home-state exception provides that the "district court shall decline to exercise jurisdiction" where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). *All* primary defendants

must be citizens of the state in which the action was originally filed for the exception to apply. *See, e.g.*, *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1067 (9th Cir. 2019) ("[CAFA] requires remand under the home state exception only if all primary defendants are citizens of the alleged home state." (citation modified)).

Similarly, under the discretionary exception, a district court "may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction" when a class action involves "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(3). Like the home-state exception, *all* primary defendants—not just some—must be Iowa citizens for the discretionary exception to apply. *See, e.g.*, *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1162-63 (11th Cir. 2021) (applying the "discretionary exception's requirement that all 'primary defendants' are . . . citizens" of the same state).

Neither the home-state exception nor the discretionary exception applies here because Donnelly's pleading alleges unambiguously that Gannett is a primary defendant for CAFA purposes. *See* S*mith*, 991 F.3d at 1162 (determining defendant's status as primary defendant "[b]ased on the allegations in plaintiffs' complaint"). Gannett is a citizen of New York. Therefore, these exceptions do not and cannot apply. The only way Donnelly can overcome this obstacle is to prove that Gannett is *not* a primary defendant. As the district court held, he cannot.

#### b. Gannett is a primary defendant under CAFA.

CAFA does not define the phrase "primary defendants," so it is proper to consult dictionary definitions. *See Thompson Truck & Trailer, Inc. v. United States*, 901 F.3d 951, 953 (8th Cir. 2018). The Oxford English Dictionary lists several definitions for "primary." *See Primary*, Oxford English Dictionary Online, https://www.oed.com/dictionary/primary_adj (last visited Apr. 9, 2026). The four lead definitions are:

- Occurring or existing first in a sequence of events; belonging to the beginning or earliest stage of something; first in time. (*Id.* at I.1)
- Of the highest rank or importance; principal, chief. (*Id.* at I.2)
- That is not subordinate to or derived from anything else; that is the source or cause of something; fundamental; original. (*Id.* at I.3.a)
- Not involving intermediate agency; immediate, first-hand; that is a direct result of something. (*Id.* at I.3.b).

The first two definitions may suggest there can be only one primary defendant. "But we know from the statutory language itself that cannot be correct because the statute uses the plural: 'primary defendants,' not 'primary defendant.'" *Hunter v. City of Montgomery, Alabama*, 859 F.3d 1329, 1335 (11th Cir. 2017) (citing 28 U.S.C. § 1332(d)(4)(B)). The leading case on this issue therefore "rule[d] out certain . . . definitions (such as those that focus on sequence), and construe[d] the word primary to mean 'principal,' 'fundamental,' or 'direct.'" *Vodenichar v. Halcon Energy Props., Inc.*, 733 F.3d 497, 504 (3d Cir. 2013); *see also Singh*, 925 F.3d at 1068 ("The inquiry is whether a defendant is a principal, fundamental, or direct defendant." (citation modified)).

Therefore, the latter two definitions above are the correct definitions to suit the statutory context. *Cf. Thompson Truck & Trailer*, 901 F.3d at 953 nn. 3-4 (relying on the Oxford English Dictionary to determine a statutory phrase's "ordinary or natural meaning").

Accordingly, federal circuit courts have determined a "primary defendant" to be one whose liability is: (1) direct, not vicarious or secondary; (2) applicable to a large portion of the proposed class; and (3) substantial as compared to the other defendants. *See Vodenichar*, 733 F.3d at 504-05; *see also Singh*, 925 F.3d at 1067-68; *Hunter*, 859 F.3d at 1335-37.

Consistent with that principle, district courts within the Eighth Circuit have concluded that when, as here, the pleading does not single out any particular defendant as more responsible for the alleged harm than any other, *all* defendants are "primary defendants." *See, e.g.*, *Nicholson v. Prime Tanning Corp.*, No. 09-6083-CV, 2009 WL 2900042, at *2 (W.D. Mo. Sept. 3, 2009) ("Courts have routinely held that when a complaint fails to distinguish among defendants as to theories of liability, all are considered primary defendants."); *Green v. SuperShuttle Int'l, Inc.*, No. 09-2129, 2010 WL 419964, at *4 (D. Minn. Jan. 29, 2010) (finding that all defendants are "primary defendants" when a complaint does not make facial distinctions among them). Therefore, Gannett is a primary defendant.



Appellate Case: 25-3451 Page: 34 Date Filed: 04/10/2026 Entry ID: 5628030

### c. Donnelly's pleading confirms that Gannett is a primary defendant.

In his motion below and now on appeal, Donnelly has shifted course from his pleading by arguing that "Gannett is present as a secondary defendant for its role managing and setting policy for the *Register*." (R.Doc. 21-1, at 9.) But that is inconsistent with his pleading. *See Sudholdt v. Country Mut. Ins. Co.*, 83 F.4th 621, 629 (7th Cir. 2023) ("[T]he controlling inquiry . . . require[es] an assessment of the plaintiff's complaint as a whole—its factual allegations, claims, and requests for relief[.]"). Donnelly's pleading "seek[s] to hold [Gannett] responsible for its own actions, as opposed to seeking to have it pay for the actions of others." V*odenichar*, 733 F.3d at 505. He has thereby conceded that Gannett is a primary defendant.

Throughout his pleading, Donnelly refers to "Defendants" as an undistinguished collective. (*See* R.Doc. 1-1, at ¶¶17, 48, 98, 103, 111, 116, 120, 140, 142-45, 162, 166-67, 181, 184, 187-90.)[4] But he also alleges that "Gannett exercises editorial control over its affiliates to an extent unseen in other chain newspapers" and "has a history of telling its newspapers what they can and cannot do while covering politically sensitive issues." (*Id.* at ¶¶85-86.) With respect to *The Register* and the Iowa Poll, Donnelly alleges an "editorial management tie between Gannett papers [like *The Register*] and Gannett

[4] Press Defendants cite Donnelly's state court petition because "CAFA jurisdiction is determined by 'the operative complaint at the time of removal.'" *Raskas v. Johnson & Johnson*, 719 F.3d 884, 888 n.1 (8th Cir. 2013) (quoting *Hargis v. Access Cap. Funding, LLC,* 674 F.3d 783, 789-90 (8th Cir.2012)). The relevant allegations are largely unchanged in the Amended Complaint. (*Compare* R.Doc. 1-1, *with* R.Doc. 22.)



Appellate Case: 25-3451 Page: 35 Date Filed: 04/10/2026 Entry ID: 5628030

corporate," and a "tie between Gannett and the *Register* specific to the poll." (*Id.* at ¶¶68, 71.) Indeed, Donnelly specifically alleges "Gannett's senior staff" intentionally deceived readers. (*Id.* at ¶126.). He spends more than three pages in his pleading to assert *eleven* "allegations specific to Gannett Co." (*Id.* at ¶¶83-93.) Meanwhile, he asserts only nine specific allegations against *The Register* and only seven specific allegations against Defendants Selzer & Co. and Dr. Selzer. (*Id.* at ¶¶67-82.)

Donnelly's causes of action and the relief he seeks further demonstrate that Gannett is a primary defendant. Donnelly asserted each cause of action equally against each Defendant. *See Smith*, 991 F.3d at 1162 (concluding defendant was a primary defendant after noting plaintiffs "assert[ed] three causes of action against [the primary defendant]—the same number as they assert against [another defendant]"). Donnelly's prayer for relief does not distinguish between any of the Defendants—let alone Gannett. (R.Doc. 1-1, at ¶¶186-96.)

Moreover, the Petition makes clear that all Defendants—including Gannett—were sued directly for all causes of action at issue as opposed to being sued on a secondary or derivative basis. (*See id.* at ¶¶121-85.) Donnelly's pleading does not, for example, "allege [his] claims against [Gannett] are based on theories of vicarious liability, indemnification, or contribution." *Gardner v. Rockwool Indus., Inc.*, No. 09-6082-CV, 2009 WL 2902573, at *2 (W.D. Mo. Sept. 2, 2009).

In sum, Donnelly alleges that "each defendant is directly liable, appear[s] to apportion liability equally among the defendants, and seek[s] similar relief from all



Appellate Case: 25-3451 Page: 36 Date Filed: 04/10/2026 Entry ID: 5628030

defendants." *Vodenichar*, 733 F.3d at 506. That demonstrates Gannett is a primary defendant. *See id.*

Donnelly cannot on one hand seek complete relief against Gannett for all pleaded causes of action without distinction while on the other hand claim that Gannett is a "secondary defendant" for the sole purpose of evading CAFA jurisdiction. Putting aside the inconsistencies in Donnelly's characterizations of Gannett's role, the Petition alleges that Gannett is a primary defendant but not a citizen of Iowa. Therefore, the home-state and discretionary exceptions are inapplicable.

**d. Donnelly's new arguments regarding different "approaches" to the primary-defendant inquiry are waived and unavailing.**

Donnelly now contends that the case law reflects "three approaches" to the definition of a "primary defendant" and advocates for his preferred "approach." (Op.Br. 14-22.) However, he never presented this argument to the district court. His sole argument before the district court was that "Gannett is present as a secondary defendant for its role managing and setting policy for the *Register*." (R.Doc. 21-1, at 9-10 (citing two unpublished federal district court decisions).) Donnelly thereby forfeited his new statutory interpretation argument. *See Schmitt v. Rebertus*, 148 F.4th 958, 966 n.3 (8th Cir. 2025) (refusing to consider new legal argument that appeared "nowhere in the . . . briefing below"). He likewise forfeited his new argument that the phrase "significant defendant"—a term not found in the statute and merely conjugated from other disparate provisions—should inform the Court's interpretation of "primary

defendant." *See Chicago Ins. Co. v. Archdiocese of St. Louis*, 740 F.3d 1197, 1202 (8th Cir. 2014) (declining to address party's "new construction for the . . . definition of" a term because it "did not raise this argument before the district court"). The Court should decline to address Donnelly's new arguments.

But even if the Court were to consider these new arguments, Donnelly's interpretation of the statute is wrong. His proposed interpretation of the term "primary defendants" suggests there can be only one "chief defendant or chief class of defendants." (Op.Br. 17). But the statutory context defeats that suggestion. *See Hunter*, 859 F.3d at 1335. Indeed, circuit courts "readily accept that more than one defendant or indeed *every named defendant* can fit within that [primary-defendant] category in a particular case." *Sudholdt*, 83 F.4th at 629 (emphasis added). And the lone case Donnelly relies on to reach a different conclusion is distinguishable from the present case. *See Watson v. City of Allen, Tx.*, 821 F.3d 634, 641-42 (5th Cir. 2016). In *Watson*, there were "58 different defendants." *Id.* Here, we have four. *See Madison v. ADT, L.L.C.*, 11 F.4th 325, 328 (5th Cir. 2021) (distinguishing *Watson*).

Even if Donnelly's newly proposed and atextual statutory interpretation of "primary defendant" were permissible, it still would not achieve his desired result because the contents of his pleading demonstrate that Gannett is a primary defendant even under that rubric. On appeal, Donnelly states that he "alleged Gannet's role was *typical* of parent corporations." (Op.Br. 21 (emphasis added)). To the contrary: in his pleading, Donnelly alleged that "Gannett exercises editorial control over its affiliates *to*

*an extent unseen* in other chain newspapers." (R.Doc. 1-1, at ¶85.) On that basis, he claimed that Gannett is uniquely and individually liable for the purported harms from the publication of the Iowa Poll. (*Id.* at ¶¶83-93.) Even if Donnelly had not waived his new arguments, and even if his proposed "approach" applied, Gannett still qualifies as a primary defendant on the face of Donnelly's pleading. Therefore, the home-state and discretionary exceptions do not and cannot apply.

The district court correctly denied remand because Donnelly cannot establish a CAFA exception. Because Press Defendants have demonstrated that CAFA removal was proper, this Court should affirm the district court's denial of remand.

### B. The Court may affirm on the independent, alternative basis that Donnelly is not entitled to jurisdictional discovery.

Donnelly suggests—but does not argue—that the district court erred "in denying plaintiff's request for jurisdictional discovery." (Op.Br. 3.) The district court declined to grant discovery because it determined Donnelly could not prove the applicability of any CAFA exception regardless of discovery. (App. 60-61; R.Doc. 47, at 9-10, Add. 10-11.) This Court should affirm. This Court may also affirm because Donnelly's request for jurisdictional discovery was procedurally improper.

"Courts look to decisions under Rule 56 for guidance in determining whether to allow discovery on jurisdictional facts." *Johnston v. United States*, 534 F.3d 958, 965 (8th Cir. 2008). To request discovery under Rule 56(d):

> a party must file an affidavit describing: (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to

> raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful.

*Id.* In other words, any such assertion that facts are unknown or in dispute *must* be supported by a Rule 56(d) affidavit. *See id.* Here, Donnelly filed no such affidavit, let alone one meeting Rule 56(d) requirements.

Second, Donnelly's request for jurisdictional discovery was speculative. Donnelly summarily asserted that *The Register*'s subscriber list for its Sunday edition as of November 1, 2024 "will easily establish what percentage of class members are residents of Iowa." (R.Doc. 21-1, at 11.) This Court has made clear that a bare "assertion that jurisdictional discovery 'would likely' reveal . . . facts [necessary to support jurisdiction] is entirely speculative, and '[w]hen a plaintiff offers only speculation or conclusory assertions about [the existence of facts demonstrating jurisdiction], a court is within its discretion in denying jurisdictional discovery.'" *Viasystems, Inc.*, 646 F.3d at 598 (second alteration in original) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1074 n.1 (8th Cir. 2004)).

Because Donnelly's request for jurisdictional discovery is procedurally defective and speculative, he is not entitled to discovery. The Court may affirm on these bases. *Hohn*, 707 F.3d at 1000.

## III. The District Court Correctly Dismissed Donnelly's Claims Because They Violate the First Amendment.

Because the district court correctly retained jurisdiction under CAFA, it properly proceeded to assess the viability of his substantive claims pursuant to Rule 12(b)(6).



Appellate Case: 25-3451 Page: 40 Date Filed: 04/10/2026 Entry ID: 5628030

(App. 81; R.Doc. 48, at 20, Add. 31.) The district court rightly dismissed every claim in its entirety with prejudice, and this Court should affirm. (*Id.*)

Donnelly's claims implicate Press Defendants' constitutionally protected speech, and they are prohibited by the First Amendment for two reasons.

*First*, the First Amendment does not tolerate Donnelly's interpretation of Iowa law—*i.e.*, that it may be used to regulate by litigation Press Defendants' federal election reporting. *The Register*'s news coverage does not fall into any traditional category of unprotected speech. To the contrary, political campaign reporting is at the zenith of First Amendment protection. Donnelly's attempt to create a new exception to the First Amendment—for so-called fake news—must fail because, as this Court has recognized, "there is no free pass around the First Amendment." *281 Care Comm. II*, 766 F.3d at 783.

*Second*, even if Press Defendants' speech was not presumptively protected under the First Amendment (though it plainly is), Donnelly would still, at a minimum, have to plausibly allege that Press Defendants published the Iowa Poll results with the requisite degree of constitutional fault: "actual malice," which is the constitutional floor for Donnelly's claims. As the district court held, his mere recitation of constitutional "buzzwords" is insufficient to satisfy this rigorous standard. (App. 31; R.Doc. 22, at ¶¶ 97-98.)



Appellate Case: 25-3451 Page: 41 Date Filed: 04/10/2026 Entry ID: 5628030

### A. The First Amendment prohibits Donnelly's claims.

The First Amendment presumptively protects Press Defendants against liability for their political opinion poll reporting, including against each of Donnelly's claims.

#### 1. Press Defendants' political campaign reporting is entitled to presumptive First Amendment protection from Donnelly's speech-based claims.

The First Amendment embodies "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). As the Supreme Court has emphasized, "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964). For that reason, "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (citation modified). "The First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for political office." *Citizens United v. FEC*, 558 U.S. 310, 339 (2010) (quoting *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 223 (1989)). Indeed, "[p]rotection of political speech is the very stuff of the First Amendment." *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 871 (8th Cir. 2012) (citation modified).

Donnelly cannot overcome the First Amendment's protection for *The Register*'s news reporting on a paramount matter of public interest—*i.e.*, the 2024 U.S. presidential and congressional elections—under the guise of protecting consumers from harm by

misapplying ICFA and Iowa's common law. In *Snyder*, the Supreme Court ruled that speech on a "matter[] . . . of public import" could not be restricted even though it may have harmed the plaintiff in violation of state law. *Snyder*, 562 U.S. at 454-55. Although the speech at issue in *Snyder* "inflict[ed] great pain," it was nevertheless immunized from liability under the First Amendment "to ensure that we do not stifle public debate." *Id.* at 460-61. Thus, to safeguard uninhibited public discourse, speech must be fully protected when—as here—it addresses "a subject of general interest and of value and concern to the public." *Id.* at 453.

A recent case—involving a state consumer protection law claim challenging political speech, as here—reinforces the core teaching of *Snyder*. *See Washington League for Increased Transparency & Ethics v. Fox Corp.*, No. 81512-1-I, 2021 WL 3910574 (Wash. Ct. App. Aug. 30, 2021) ("*WASHLITE*"). In *WASHLITE*, the plaintiff claimed that Fox News violated the state of Washington's Consumer Protection Act ("CPA") by making statements downplaying the coronavirus and accusing the government and media of attempting to undermine then-former President Trump through exaggerating the coronavirus's danger. *Id.* at *1. Recognizing that the allegedly actionable statements "clearly implicate matters of public concern and receive special First Amendment protections," the *WASHLITE* court rejected the plaintiff's CPA claim based on established First Amendment principles:

> WASHLITE cites no authority for the proposition that false statements about threats to public health, *even if recklessly made*, fall within any exception to the First Amendment. To the contrary, the Supreme Court



Appellate Case: 25-3451 Page: 43 Date Filed: 04/10/2026 Entry ID: 5628030

> in *Alvarez* disavowed the principle that false expressions in general receive a lesser degree of constitutional protections simply by virtue of being false.

*Id.* at *4-5 (emphasis added); *see also United States v. Alvarez*, 567 U.S. 709, 717-18 (2012) (holding the Stolen Valor Act, criminalizing false claims of receiving the congressional Medal of Honor, invalid under the First Amendment because it was not confined to the "few historic and traditional categories" of expression "where the law allows content-based regulation of speech").

So too here. Donnelly's claims—brought against a community newspaper for reporting poll results and information of "political concern to all Americans"—are barred on their face by the First Amendment. *WASHLITE*, 2021 WL 3910574, at *4. Donnelly's suggestion that ICFA and tort law can be used to proscribe allegedly false political speech, "absent any evidence that the speech was used to gain a material advantage, . . . would give government a broad censorial power unprecedented in this Court's cases or in our constitutional tradition." *Alvarez*, 567 U.S. at 723.

There is no general government power to punish alleged political falsehoods outside of very few exceedingly narrow exceptions, which have no application here—*i.e.*, defamation, fraud, and perjury. *Id.* To hold otherwise would put the "government in the unseemly position of being the arbiter of truth about political speech." *281 Care Comm. v. Arneson,* 638 F.3d 621, 635–36 (8th Cir. 2011) ("*281 Care Comm. I*"). In our constitutional order, that role is committed to voters, not the courts. *Id.*

### 2. Donnelly's proposal to create a First Amendment exception for "fake news" must be rejected.

Under the First Amendment, claims for "fake news" do not and cannot exist. "From 1791 to the present, . . . the First Amendment has permitted restrictions upon the content of speech in a few limited areas, and has never include[d] a freedom to disregard these traditional limitations." *United States v. Stevens*, 559 U.S. 460, 468 (2010) (citation modified). These "historic and traditional categories" have never been extended to generalized claims of false political speech. *Id.*; *see 281 Care Comm. I*, 638 F.3d at 633-34 ("We find that the Supreme Court has never placed knowingly false campaign speech categorically outside the protection of the First Amendment and we will not do so today.").

The opposite is true: "[t]he regulation of political speech or expression is, and always has been, at the core of the protection afforded by the First Amendment." *281 Care Comm. II*, 766 F.3d at 784. The remedy for disagreement with political speech that one does not like is counter-speech—not court-enforced class action damages under the guise of commercial regulations and tort law. *See id.* at 793 ("Especially as to political speech, counterspeech is the tried and true buffer and elixir."). "This comports with the common understanding that some false statements are inevitable if there is to be an open and vigorous expression of views in public and private conversation, expression the First Amendment seeks to guarantee." *Alvarez*, 567 U.S. at 718.



Appellate Case: 25-3451 Page: 45 Date Filed: 04/10/2026 Entry ID: 5628030

Accordingly, to safeguard our constitutional commitment to open debate on public issues, speech is presumptively shielded by the First Amendment unless it falls within one of the narrowly defined historical exceptions. *Stevens*, 559 U.S. at 468-70; *see also Alvarez*, 576 U.S. at 719 ("The Court has never endorsed the categorical rule . . . that false statements receive no First Amendment protection."). These categories may not be elasticized at Donnelly's whim to encompass "fake news" about election campaigns. (App. 11; R.Doc. 22, at ¶2.)

The First Amendment stands resolutely against demands to regulate "truth" in political reporting, even a claim of fraud based on political speech that is "knowingly false." *281 Care Comm. I*, 638 F.3d at 634. n.2.[5] Although "fraud" is a category of speech outside the First Amendment's protection, simply "labeling an action one for 'fraud,' of course, will not carry the day." *Illinois ex. rel. Madigan v. Telemarketing Assocs.*, 538 U.S. 600, 617 (2003). This Court has unequivocally rejected the use of general fraud principles to proscribe political speech:

> To the extent that defendants also argue in favor of application of fraud principles to all knowingly false speech, we reject the argument, noting the Supreme Court has carefully limited the boundaries of what is considered fraudulent speech. It has not included all false speech, or even all *knowingly false* speech.

---

[5] In addition to this Court's decision in *281 Care Comm. II*, other post-*Alvarez* decisions have invalidated state laws punishing election campaign misinformation, even where the laws were restricted to deliberately or recklessly falsified speech. *See Grimmett v. Freeman*, 59 F.4th 689 (4th Cir. 2023); *Susan B. Anthony List v. Driehaus*, 814 F.3d 466 (6th Cir. 2016).

*218 Care Comm. I*, 638 F.3d at 634 n.2 (emphasis added).

Additionally, as *Alvarez* reiterated, false statements are constitutionally protected unless there is some "legally cognizable harm associated with [the] false statement." 567 U.S. at 719. Donnelly's claims based on "false misinformation" therefore cannot be maintained. (*See* App. 32; R.Doc. 22, at ¶104.) He only alleges that he was "intensely frustrated" with and felt "disserv[ed]" by *The Register*'s publication of polling results that did not match the elections' "final outcome." (App. 13; R.Doc. 22, at ¶8.) Even accepting as true Donnelly's allegation that he received a "false impression" about the state of Iowa's electorate from *The Register*'s reporting of the Iowa Poll results, he acknowledges that the reporting did not impede him from discussing "voting and politics with friends and neighbors." (App. 40; R.Doc. 22, at ¶154.) That is not a legally cognizable injury. Rather, it is precisely how democracy works. Such community discussions are "the way of the world in election discourse[,]" *281 Care Comm. II*, 766 F.3d at 795, and underscore that "[t]he remedy for speech that is false is speech that is true." *Alvarez*, 567 U.S. at 727.

In service of his attempt to create a novel exception to the First Amendment for so-called "fake news," Donnelly wrongly claims that the "correct standard" for *all* claims "involving speech on matters of public concern" is "actual malice." (Op.Br. 29.) No other court has accepted this proposition, and Donnelly identifies no authority to support it. Instead, he relies on a patchwork of inapposite defamation and intentional tort cases, each of which applied "actual malice" to speech falling into a previously

established and limited historical exception. (*See* Op.Br. 29 & n.11.) *Cf. Time, Inc. v. Hill*, 385 U.S. 374, 390-91 (1967) (disclaiming that its analysis is limited to its own "particular" and "discrete context"); *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 513 (1984) (assuming for limited purpose but expressly declining to decide "that the *New York Times* rules should be applied to a claim of product disparagement"); *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 56 (1988) (finding that the "actual malice" standard is an *additional* showing "for the tort of intentional infliction of emotional distress by reason of publications" required by the First Amendment); *see also Alvarez*, 567 U.S. at 718 ("[I]solated statements in some earlier decisions do not support . . . that false statements, as a general rule, are beyond constitutional protection."). In fact, this Court has explicitly recognized that "the First Amendment precludes punishment for generalized 'public' frauds." *281 Care Comm. I*, 638 F.3d at 634 (quoting *Hustler Mag.*, 485 U.S. at 52).

Donnelly's conclusion that *The Register*'s political campaign reporting is not afforded presumptive First Amendment protections "would take the quoted language" from the cases he cites "far from its proper context" and impermissibly apply the actual malice requirement "for a new purpose." *Alvarez*, 567 U.S. at 718-19. Thus, his supposition that civil claims may freely target whatever he deems to be "fake news"—so long as it is accompanied by an allegation of actual malice—is invalid under the First Amendment and has been rejected by both federal and state courts, including this

Court. *281 Care Comm. I*, 638 F.3d at 634 n.2; *Hollander v. CBS News, Inc.*, No. 16 Civ. 6624, 2017 WL 1957485, at *3 (S.D.NY. 2017); *WASHLITE*, 2021 WL 3910574, at *5.

Permitting claims of "fraud" based on news reporting would render the First Amendment illusory. And permitting Donnelly's claims here to proceed would violate a fundamental premise of free speech by granting him "freewheeling authority to declare new categories of speech outside the scope of the First Amendment" by a rote pleading of "fraud." *Stevens*, 559 U.S. at 472. That is a "startling and dangerous" proposition, subject to no principled limitation. *Id.* at 470. The First Amendment does not tolerate such a result. This Court should affirm the dismissal of all claims based on the First Amendment's presumptive protections for *The Register*'s campaign reporting.[6]

### B. In the alternative, Donnelly's claims must be dismissed for failing to satisfy additional First Amendment principles.

Even if *The Register*'s political campaign reporting were *not* endowed with presumptive protection from this lawsuit under the First Amendment, Donnelly's

---

[6] The district court's order suggested that it is not clear "whether the protections afforded to controversial political opinions expressed by individuals" are likewise afforded to "newspapers engaged in political reporting." (App. 68; R.Doc. 48, at 7, Add. 18.) Press Defendants respectfully disagree insofar as the First Amendment does not condition protection for speech on the identity of the speaker. Indeed, it *prohibits* laws that are "designed or intended to suppress or restrict the expression of specific speakers." *United States v. Playboy Ent. Grp.*, 529 U.S. 803, 812 (2000) (noting that speaker-specific laws "contradict basic First Amendment principles"). "The First Amendment protects speech *and speaker*, and the ideas that flow from each." *Citizens United*, 558 U.S. at 341 (emphasis added). This Court should therefore affirm without accepting any speaker-based limitation on First Amendment protections for "newspaper coverage on a matter of public concern." (App. 69; R.Doc. 48, at 8, Add. 19.)

claims still do not pass constitutional muster. The Supreme Court has established that—at minimum—the same First Amendment restrictions applicable to defamation claims govern tort claims arising from speech on matters of public concern: Only a false statement of fact "made with 'actual malice,' *i.e.*, with knowledge that the statement was false or with reckless disregard as to whether or not it was true," is actionable. *See Hustler Mag.*, 485 U.S. at 56; *see also Snyder*, 562 U.S. at 458. These constitutional restrictions defeat Donnelly's claims in their entirety.

### 1. The district court correctly determined that the "actual malice" requirement forecloses Donnelly's claims.

Five decades ago, the Supreme Court recognized that "erroneous statement is inevitable in free debate and . . . it must be protected if the freedoms of expression are to have the 'breathing space' that they 'need . . . to survive.'" *Sullivan*, 376 U.S. at 271-72. To carve out the "breathing space" needed such that "protected speech is not discouraged," *Sullivan* established the "actual malice" standard. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 686 (1989); *see Sullivan*, 376 U.S. at 279-80. Donnelly concedes that his claims are—at minimum—subject to this standard. (*See* Op.Br. 29.) The actual malice standard protects "uninhibited, robust, and wide-open" debate on public issues, and it requires proof that the defendant published a false statement with either (1) knowledge that it was false or (2) with reckless disregard as to its truth or falsity. *Sullivan*, 376 U.S. at 270; *see Walker v. Pulitzer Publ'g Co.*, 394 F.2d 800, 803 (8th Cir. 1968); *Carr v. Bankers Trust Co.*, 546 N.W.2d 901, 904 (Iowa 1996).

"The standard of actual malice is a daunting one." *Howard v. Antilla*, 294 F.3d 244, 252 (1st Cir. 2002). It is provable only by evidence that the defendant "realized that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement." *Bose Corp.*, 466 U.S. at 511 n.30. Constitutional malice requires clear and convincing proof of Press Defendants' state of mind at the time the poll results were published. *Blessum v. Howard Cnty. Bd. of Supervisors,* 295 N.W.2d 836, 843 (Iowa 1980); *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). The test is subjective, and negligence alone is insufficient. *Sullivan*, 376 U.S. at 279-80; *McCarney v. Des Moines Register & Tribune Co.,* 239 N.W.2d 152, 156 (Iowa 1976). The district court rightly determined that Donnelly failed to plausibly allege actual malice and dismissed the case. This Court should affirm.

**a. Donnelly misapprehends and fails to plead "reckless disregard."**

Donnelly attempts to skirt the rigorous constitutional actual-malice requirement by claiming the "reckless disregard" form of actual malice absolves him from demonstrating that Press Defendants' publication of the Iowa Poll was "intentionally" or "knowingly" inaccurate. (Op.Br. 10, 31-32.) But he is wrong.

To establish "reckless disregard" for the truth, Donnelly must show that Press Defendants "*actually* had a 'high degree of awareness . . . of probable falsity'" at the time of publication. *Harte-Hanks*, 491 U.S. at 688 (emphasis added). Contrary to Donnelly's theory, "reckless disregard" is not assessed by an objective reasonableness standard.



Appellate Case: 25-3451 Page: 51 Date Filed: 04/10/2026 Entry ID: 5628030

"[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant *in fact entertained serious doubts as to the truth of his publication*." *St. Amant*, 390 U.S. at 731 (emphasis added).

Donnelly cannot dispense with the requirement that he allege specific facts plausibly showing that Press Defendants subjectively possessed serious doubts as to the truth of the Iowa Poll results at the time of publication—*i.e.*, a showing of intentionality. *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964); *see also Desnick v. ABC*, 233 F.3d 514, 517 (7th Cir. 2000) ("[T]he defendant must either know that his published statement was probably false, or suspecting that it may be false, deliberately close his eyes to the possibility."); *McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1508 (D.C. Cir. 1996) ("The actual malice standard is subjective; the plaintiff must prove that the defendant actually entertained a serious doubt."). Donnelly cites this Court's decision in *Tholen v. Assist Am., Inc.*, which is clear on this point: "reckless disregard" "requires that a defendant make a statement while subjectively believing that the statement is probably false." 970 F.3d 979, 984 (8th Cir. 2020) (citation modified). (*See* Op.Br. 42.)

Therefore, contrary to his current argument, the district court did not hold Donnelly to an "artificially high standard" when it dismissed his claims. (Op.Br. 32.) Instead, it faithfully applied *Sullivan*'s requirements in determining that the Amended Complaint failed to plausibly allege any facts that satisfy the "onerous" constitutional malice standard. *Earley v. GateHouse Media Pa. Holdings, Inc.*, No. 3:12-1886, 2013 WL

5466149, at *6 (M.D. Pa. Sept. 30, 2013) ("In the wake of *Iqbal* and *Twombly*, adequately pleading actual malice is an onerous task."). Indeed, "every circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice." *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020) (citation modified); *see Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 377-78 (4th Cir. 2012).

The Amended Complaint contains no specific factual allegations giving rise to a reasonable inference that Press Defendants made a knowingly "false description of the state of the electorate" or published the Iowa Poll with a "reckless disregard for the truth." (*See* App. 31; R.Doc. 22, at ¶¶97-98.) Rather, Plaintiff "assert[ed] only a bare legal conclusion accompanied by actual malice buzzwords that [Press] Defendants acted knowingly or recklessly," and the district court therefore correctly dismissed the Amended Complaint. (App. 71; R.Doc. 48, at 10, Add. 21.)

**b. Donnelly's pleading is insufficient to plausibly allege actual malice.**

Without specific factual allegations to rely upon, Donnelly's Opening Brief instead relies on speculation, innuendo, and various irrelevant matters. First, he claims Press Defendants characterized the Iowa Poll results as "stunning, shocking, and surprising," which he offers as evidence of actual malice. (Op.Br. 37-43.) This argument is self-refuting. The facts alleged demonstrate Press Defendants' subjective, good-faith

belief in the accuracy of the poll results at the time they were published, notwithstanding their departure from prior poll results. That good-faith belief is consistent with Selzer's admitted reputation as the head of a "nationally recognized, industry leading polling and audience research firm." (App. 25-26; R.Doc. 22, at ¶77.)

Second, Donnelly asserts there should have been "alarm bells ringing all over" given the congressional race results in Iowa. (Op.Br. 40.) In other words, he argues that Press Defendants should have been more diligent or reached a different conclusion when considering publication of the Iowa Poll results—a claim that cannot reach the level of actual malice as a matter of law. *Franklin Prescriptions, Inc. v. New York Times Co.*, 424 F.3d 336, 342 (3d Cir. 2005) ("Mere negligence does not rise to the level of actual malice[.]"); *McDougal v. Fox News Network*, 489 F. Supp. 3d 174, 185 (S.D.N.Y. 2020) ("Actual malice is a high bar. A plaintiff cannot . . . allege merely that the speaker was negligent in failing to uncover falsity or that he should have investigated his claims before speaking.").

Third, Donnelly argues that Press Defendants acted contrary to "internal news principles" and "industry customs and practices." (Op.Br. 34-35.) But the First Amendment prohibits claims sounding in "professional malpractice" by journalists.[7]

---

[7] The Amended Complaint seeks recovery for "professional negligence"; "recklessly negligent reporting"; and political campaign speech that a speaker "reasonably should know" is fraudulent. (App. 40-41; R.Doc. 22, at ¶¶152, 158 (citing Iowa Code §§ 714H.3(1), 168).) Such claims are constitutionally defective on their face. Plaintiff may not circumvent the First Amendment by attempting to impose liability on speech concerning public issues through reliance on negligence-based theories of



Appellate Case: 25-3451 Page: 54 Date Filed: 04/10/2026 Entry ID: 5628030

*Harte-Hanks*, 491 U.S. at 663-64 n.5 (holding that even "highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting" is not actual malice); *see also Fairbanks v. Roller*, 314 F.Supp.3d 85, 92 (D.D.C. 2018) (holding "fail[ure] to perform due diligence consistent with professional standards of journalism" does not "come close to" actual malice); *Tavoulareas v. Piro*, 817 F.2d 762, 796 (D.C. Cir. 1987) ("[Courts] do not sit as some kind of journalism review seminar offering our observations on contemporary journalism and journalists." (citation modified)); *Triestman v. Turkheimer*, No. 19-CV-03081, 2020 WL 9594315, *2 (N.D. Ill. Aug. 4, 2020). Even "lapses in ethics and judgment," including a failure to perform additional research, "amount at most to negligence or bad journalism, *not actual malice*." *OAO Alfa Bank v. Ctr. for Pub. Integrity*, 387 F. Supp. 2d 20, 56 (D.D.C. 2005) (emphasis added); *see also Levesque v. Doocy*, 557 F. Supp. 2d 157, 169 (D. Me. 2008). The district court got it right: "Allegations that a newspaper deviated from the ordinary ethics and customs of the industry are insufficient to establish actual malice." (App. 72; R.Doc. 48, at 11, Add. 22.)

Fourth, Donnelly claims that Press Defendants' perceived expertise in Iowa politics and "the Register's attitude toward and explanation of the Iowa Poll in general" imply actual malice. (Op.Br. 33-34.) To the contrary, the allegations regarding Press Defendants' diligence with respect to their reporting and the Iowa Poll is the antithesis

---

recovery. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991); *see McCarney*, 239 N.W.2d at 156.

of actual malice. (App. 71; R.Doc. 48, at 10, Add. 21 ("Finding actual malice requires Donnelly to plausibly allege Defendants sacrificed decades of work in cultivating [a] reputation for accuracy by 'knowingly or recklessly' manufacturing a poll they knew was incorrect in pursuit of an unclear goal.").)

Fifth, Donnelly asserts the magnitude of the divergence between the Iowa Poll results and the later election results itself demonstrates actual malice. The district court correctly rejected these "conclusory statements" because alleging "[t]hat [a] reporter should have known or should have doubted [the] accuracy of an article before publishing it" is insufficient as a matter of law to plead actual malice. (App. 72; R.Doc. 48, at 11, Add. 22 (quoting *Lee v. TMZ Prods. Inc.*, 710 F. App'x 551, 560 (3d Cir. 2017)).)

Lastly, Donnelly asserts these defective independent allegations, when considered cumulatively, could support an actual malice claim.[8] For this argument, he relies on a distinguishable Tenth Circuit case, *McDonald v. Wise*, 769 F.3d 1202, 1219 (10th Cir. 2014). (*See* Op.Br. 43.) The *McDonald* court was faced with repeated and concrete instances of the defendant's own behavior discrediting her allegations about the plaintiff, which could give rise to a reasonable inference of actual malice. *McDonald*,

[8] Donnelly's argument that no defamation claim could survive the district court's actual malice analysis "without a direct admission by a defendant or a whistleblower" presents a straw man. (Op.Br. 44-45.) As this Court made clear in *Nelson Auto*, a "direct admission" is not required to plausibly allege actual malice under the *Iqbal/Twombly* pleading requirements. *See* 951 F.3d at 958. Because Plaintiff, like the plaintiff in *Nelson Auto*, failed to plead sufficient facts that would plausibly support a reasonable inference—much less a finding—of actual malice, his claims should similarly be dismissed.



Appellate Case: 25-3451 Page: 56 Date Filed: 04/10/2026 Entry ID: 5628030

769 F.3d at 1219. Here, however, there are no concrete or affirmative factual allegations, much less proof of repeated conduct, to support an inference that Press Defendants published the Iowa Poll with actual malice. Further, the First Amendment disfavors reliance on merely circumstantial evidence to support an ultimate finding of actual malice. *See Harte-Hanks*, 491 U.S. at 667-68 (holding that "courts must be careful not to place too much reliance on such factors" to ensure adequate protection for free speech).

In sum, Donnelly failed to plead any plausible claim that could overcome the First Amendment's robust protections for political reporting or that could even satisfy the constitutional floor for speech-based tort claims required by the actual malice standard. Therefore, the entire action is constitutionally defective and must be dismissed in its entirety. This Court should affirm the district court's decision to do so.

## IV. The District Court Correctly Dismissed Donnelly's Claims on Their Merits Because None Asserts a Plausible Claim for Relief.

Donnelly's state-law arguments for reversal fare no better than his constitutional ones. To survive a motion to dismiss for failure to state a claim, a complaint must rise "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "requires the plaintiff to allege 'more than a sheer possibility that a defendant has acted unlawfully.'" *In re SuperValu, Inc.*, 925 F.3d 955, 962 (8th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678).

None of Donnelly's claims meets this standard. He seemingly concedes as much, arguing instead that his pleading "rais[es] a reasonable possibility" of relief. (Op.Br. 35-38 & n.12, 48.) But "possibility" is not "plausibility." *SuperValu, Inc.*, 925 F.3d at 962. Donnelly's pleading must "nudge" his claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. He failed to do so. This Court should affirm the district court.

### A. Donnelly does not assert a plausible claim for fraudulent misrepresentation.

Donnelly first claims that Defendants fraudulently misrepresented the state of the election. (App. 35-38; R.Doc. 22, at ¶¶123-41.) A fraudulent misrepresentation claim requires the plaintiff to prove, *inter alia*, a false representation; knowledge of its falsity and intent to deceive; justifiable reliance on the representation; and compensable injury. *See Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 400 (Iowa 2001) (en banc). Because the claim sounds in fraud, Rule 9(b)'s heightened pleading requirements apply, requiring a complaint to "state with particularity the circumstances constituting fraud." *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 421 (8th Cir. 2020) ("The complaint must plead the who, what, where, when, and how of the alleged fraud." (citation modified)).

The district court correctly dismissed Donnelly's fraudulent misrepresentation claim "because no false representation was made." (App. 73; R.Doc. 48, at 12, Add. 23.)

This Court may also affirm because Donnelly failed to adequately plead other elements of fraud.

### 1. Donnelly does not plead an actionable false representation.

Donnelly claims that Press Defendants made two false representations: (1) a generic promise to provide "trustworthy news," and (2) the "cho[ice] to publish" the Iowa Poll results. (App. 35; R.Doc. 22, at ¶124; Op.Br. 45-46.) Neither amounts to an actionable false representation.

*First*, the alleged "promise" to provide "trustworthy news" is not a standalone representation. It is derivative of the lone representation at issue—the publication of the Iowa Poll results. Indeed, the only articles in *The Register* that Donnelly alleges were false and not "trustworthy" are those related to the Iowa Poll. (App. 35-38; R.Doc. 22, at ¶¶123-41.) For this reason alone, Donnelly's "trustworthy news" allegation fails.

Even if this generic promise could be considered a standalone representation, it cannot provide a basis for a fraud claim. Donnelly attributes it to *The Register*'s "mission statement," which "pledges" to provide "trustworthy, smart and engaging news and information" and to serve as Iowa's "premier source of information." (App. 11; R.Doc. 22, at ¶1.) But a corporate mission statement expressing an aspirational purpose is precisely the kind of "optimistic rhetoric" that is not actionable as a matter of law. *See City of Plantation Police Officers Pension Fund v. Meredith Corp.*, 16 F.4th 553, 556-57 (8th Cir. 2021) (holding that "vague and optimistic rhetoric . . . constitutes corporate puffery" that cannot support a fraud claim) (citation modified); *In re Stratasys Ltd. S'Holder Sec.*

*Litig.*, 864 F.3d 879, 882 (8th Cir. 2017) ("Optimistic statements are not actionable if they cannot be supported by objective data or otherwise subject to verification by proof." (citation modified))

Moreover, the operative complaint contains no allegations regarding (1) when or where the "mission statement" was published or uttered; (2) the context in which the statement was issued; (3) when, where, or even if Donnelly read or heard the statement; or (4) how the statement affected Donnelly's consumer conduct. Each omission independently fails Rule 9(b)'s heightened pleading standard. *See Ambassador Press, Inc.*, 949 F.3d at 421 ("The complaint must plead such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." (citation modified)).

*Second*, Donnelly has not adequately pled an actionable false representation with respect to the Iowa Poll's methods or results. He alleges that Selzer "designed" the Iowa Poll's methodology; that every article about the poll contained a methodology statement; and that Selzer used the same methodology in 2024 that she used in past election cycles. (App. 27, 35; R.Doc. 22, at ¶¶83, 121.) In other words, "Defendants told readers exactly what they did and how they did it." (App. 73; R.Doc. 48, at 12, Add. 23.) That alone is fatal to Donnelly's fraudulent misrepresentation claim. *See Bass v. J.C. Penney Co., Inc.*, 880 N.W.2d 751, 764 (Iowa 2016) (rejecting consumer fraud claim alleging misrepresentations on charges when documentation "plainly demonstrated" exactly what they would be).

Donnelly further alleges that the Iowa Poll's "methodology resulted in a radically flawed result." (App. 35; R.Doc. 22, at ¶121.) But he "does not claim the disclosed methodology was not followed, that results were falsified, or that Defendants altered the poll in some other way which did not reflect the publicly disclosed methodology." (App. 73; R.Doc. 48, at 12, Add. 23.) He simply alleges, with the benefit of hindsight, that other weighting methodologies may have yielded a more accurate prediction of the results. (*See* App. 19; R.Doc. 22, at ¶¶38-39.) But this *post hoc* comparison of the poll results against the subsequent election results is insufficient to plead a fraud claim. *See, e.g.*, *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 918 (8th Cir. 2007) (dismissing complaint that merely "expresses disagreement with [a] conclusion . . . but [] does not specify where and how the analysis falls short").

Donnelly's claim exposes his fundamental misunderstanding of opinion polling. As the district court correctly held, "[t]he results of an opinion poll are not an actionable false representation merely because the anticipated results differ from what eventually occurred." (App. 73; R.Doc. 48, at 12, Add. 23.) A political opinion poll is not intended to be—and cannot be—a factual representation of a guaranteed future election outcome. *See Scott v. Roberts*, 612 F.3d 1279, 1283 (11th Cir. 2010) ("[O]pinion polls of random selections of voters are snapshots with margins of error, and campaigns are, to say the least, dynamic projects."). Donnelly's bare assertion that the Iowa Poll was "intentionally fraudulent or recklessly irresponsible" simply because the poll did not



Appellate Case: 25-3451 Page: 61 Date Filed: 04/10/2026 Entry ID: 5628030

line up with election results is nothing more than a bare statement of his own legal conclusion, erroneously based on post-election hindsight. (App. 23; R.Doc. 22, at ¶61.)

Donnelly argues that the district court wrongly treated the Iowa Poll results "like an 'opinion' about future election results" rather than as a falsifiable "factual statement based on statistical science." (Op.Br. 49-50.) But he fails to grapple with the district court's core determination—*i.e.*, Donnelly's claim that the Iowa Poll can be treated as a factual statement "is flawed because it is impossible to know what the state of the presidential race was during the days the poll was conducted." (App. 74; R.Doc. 48, at 13, Add. 24.)

The dearth of contrary authority propounded by Donnelly is revealing. He relies on a single case to argue that the Iowa Poll results are actionable "falsifiable statements." (Op.Br. 47.) *See Peoples Bank & Trust Co. of Mountain Home v. Globe Int'l Publishing, Inc.*, 978 F.2d 1065, 1067 (8th Cir. 1992). In *Peoples Bank*, this Court held that a tabloid article contained statements about its subject—such as "the report of [a] pregnancy" and claims that the subject "quit[] her life-long profession"—that were "subject to reasonable belief" and "could be proved either true or false." *Id.* at 1069. But a statement as to whether someone is pregnant or quit their job is self-evidently distinguishable from an opinion poll's projection of who *may* win a presidential election. The former questions are plainly falsifiable; the latter, based on a hypothetical future outcome, is not. *Cf. id.* (distinguishing between falsifiable facts and unfalsifiable opinions).



Appellate Case: 25-3451 Page: 62 Date Filed: 04/10/2026 Entry ID: 5628030

Unlike the static state of past affairs in *Peoples Bank*, Donnelly's claims would demand a guarantee of a future outcome based on a "snapshot" of the opinions of a "dynamic and changing electorate." (App. 73; R.Doc. 48, at 12, Add. 23.) That cannot amount to an actionable misrepresentation as a matter of law. *See Scott*, 612 F.3d at 1283. "A representation about a future act or event . . . is merely a prediction, amounts to conjecture, and is not fraud." *Selective Ins. Co. of Am. v. Heritage Constr. Cos., LLC*, 165 F.4th 1132, 1138 (8th Cir. 2026); *see also Int'l Milling Co. v. Gisch*, 137 N.W.2d 625, 631 (Iowa 1965) ("A mere statement of an honest opinion, as distinguished from an assertion of fact will not amount to fraud, even though such opinion be incorrect."); *281 Care Comm. II*, 766 F.3d at 795 (invalidating Minnesota campaign law penalizing alleged knowingly false communications about ballot initiatives, noting that "too often" such speech would be an inactionable "statement of conjecture about the future state of affairs should the ballot question pass or fail"). This Court should affirm the district court's dismissal.

#### 2. Donnelly's failure to plead additional elements of fraudulent misrepresentation are proper alternative bases to affirm.

Donnelly's fraudulent misrepresentation claim also fails because he did not adequately plead other elements of the offense.

*First*, Iowa law requires Donnelly to plead that he "acted in reliance on the truth of the representation and was justified in relying on the representation." *Gibson*, 621 N.W.2d at 400; *see also Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 737 (Iowa 2009).

Here, Donnelly pleads in conclusory fashion that he justifiably relied on *The Register*'s "promise" of "trustworthy news" because of the national scope of Gannett's operations. (App. 36-38; R.Doc. 22, at ¶¶131-38.) He also asserts that "[g]iven the Iowa Poll's historic accuracy and the *Register*'s general reputation for accuracy, the Plaintiff and Plaintiff Class justifiably relied on the poll." (App. 38; R.Doc. 22, at ¶138.) But this mere recitation of the element is not sufficient to state a claim. *See Twombly*, 550 U.S. at 545 ("[A] mere formulaic recitation of a cause of action's elements will not do.").

Donnelly does not plead any facts showing *any* action taken by him in reliance on either *The Register*'s "promises" or articles related to the Iowa Poll. It is not enough that Donnelly was allegedly a subscriber to *The Register* at the time the poll was published; he must have affirmatively initiated a subscription in reliance on the Iowa Poll results. But he could not have relied on those articles when he subscribed; they had not yet been published. (*See* App. 13, 15, 19; R.Doc. 22, at ¶¶8, 17, 40.)

Furthermore, Donnelly does not allege any facts suggesting his reliance on the Iowa Poll was justified. In fact, he claims the opposite. He alleges, for example, that Selzer "has a track record of undersampling Republicans in her polling" and that the Iowa Poll "was an obvious outlier compared to other publicly available polling in swing states." (App. 15, 19; R.Doc. 22, at ¶¶18, 38.) In other words, he alleges both that (1) Selzer's polling was not credible on its face because it departed from contemporaneous polls and it was conducted by a pollster with a "track record" of historical "misses"; and (2) that he nevertheless justifiably relied on its accuracy. Both

cannot be true. Donnelly's own allegations defeat his fraudulent misrepresentation claim. *Cf. In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 407 (S.D.N.Y. 2001) (holding that pleading rules do not give "plaintiffs license to plead inconsistent *assertions of facts* within the allegations that serve as the factual predicates for an independent, unitary claim").

*Second*, Iowa law requires Donnelly to plead a "pecuniary loss suffered as a result of the recipient's reliance upon the misrepresentation." *Putman v. Walther*, 973 N.W.2d 857, 864 (Iowa 2022). Here, Donnelly alleges that he and his fellow subscribers were harmed by the Iowa Poll because "they pay good money to the *Register* to read accurate and important news, not to be misled by fraudulent misrepresentations." (App. 38; R.Doc. 22, at ¶140.) But he does not allege that he "pa[id] good money" *as a result of* the publication of the Iowa Poll results. (*Id.*) To the extent Donnelly seeks damages for costs paid *before* the articles about the Iowa Poll were published, those costs cannot have been "suffered as a result of his reliance upon" the poll results because he paid them before reading or relying on the reporting. *Putman*, 973 N.W.2d at 864. Accordingly, Donnelly has not plausibly alleged a compensable injury to support a fraudulent misrepresentation claim.



Appellate Case: 25-3451 Page: 65 Date Filed: 04/10/2026 Entry ID: 5628030

### B. Donnelly does not assert a plausible claim for negligent misrepresentation.

Donnelly claims that Press Defendants are liable for negligent misrepresentation to a reckless degree.[9] (App. 38; R.Doc. 22, at ¶¶142-57.) Among other things, a plaintiff must sufficiently allege that the defendant "owe[s] a duty to the person to whom the information is provided." *Sain v. Cedar Rapids Cmty. Sch. Dist.*, 626 N.W.2d 115, 124 (Iowa 2001). Such a duty "requires the defendant to be in the business or profession of supplying information *for the guidance of others*." *Id.* at 125 (emphasis added).

Here, the district court correctly dismissed Donnelly's negligent misrepresentation claim because he "failed to plausibly allege [that] Defendants owed him a duty[.]" (App. 76; R.Doc. 48, at 15, Add. 26.) Donnelly seemingly presumes that Press Defendants are "in the business or profession of supplying information to others" because they publish a newspaper, and newspapers contain information. (*See* Op.Br. 52-53.) Iowa law rejects this view.

Recognizing the potentially "expansive nature" of negligent misrepresentation, the Iowa Supreme Court has repeatedly stressed the importance of "properly limit[ing] the tort within certain boundaries." *Sain*, 626 N.W.2d at 123; *see also Dinsdale Constr., LLC v. Lumber Specialties, Ltd.*, 888 N.W.2d 644, 655 (Iowa 2016) (cautioning that the

---

[9] Beyond its failure to state a claim on its face, Donnelly's negligent misrepresentation claim contradicts his acknowledgment that Press Defendants' publication of the Iowa Poll is subject to the constitutional "actual malice" requirement. (*See* App. 30; R.Doc. 22, at ¶96.) As discussed *supra*, the First Amendment prohibits liability based on mere negligence.

doctrine has "limits"). Accordingly, a duty only arises if a defendant "suppl[ies] information in an advisory capacity"—*i.e.*, they are "manifestly aware how the information will be used" and they "intend[] to supply it for that purpose." *Van Sickle Constr. Co. v. Wachovia Comm. Mortg., Inc.*, 783 N.W.2d 684, 691 (Iowa 2010) (citation modified). This is a "special relationship" of advice and guidance. *See Jensen v. Sattler*, 696 N.W.2d 582, 588 (Iowa 2005). Such advisory relationships, tailored to the specific needs and circumstances of the receiving party, arise in professional settings involving "accountants, appraisers, school guidance counselors and investment brokers." *Dinsdale Constr.*, 888 N.W.2d at 655 (citation modified); *see also Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 113 (Iowa 2012) ("The advisory nature of the principal-agent relationship supports allowing a claim of negligent misrepresentation.").

The district court correctly ruled that Press Defendants do not owe a duty here. "The relationship between a newspaper and the public is fundamentally different from the relationship between an accountant or attorney and his or her client." (App. 75; R.Doc. 48, at 14, Add. 25.) Indeed, a newspaper "cannot intend to supply information for any particular purpose because no singular purpose exists among the myriad readers." (App. 76; R.Doc. 48, at 15, Add. 26.) The relationship between a newspaper and its subscribers is an arm's-length relationship, not an advisory one. *See Pitts*, 818 N.W.2d at 112 (characterizing relationship between buyer and seller as "clearly arm's-length" in nature).



Appellate Case: 25-3451 Page: 67 Date Filed: 04/10/2026 Entry ID: 5628030

Donnelly argues that he "can check all [the] boxes" necessary to establish a duty. (Op.Br. 51.) But he does not address the key failure of his claim: the relationship between a newspaper and its readers is not the sort of *advisory relationship* where one is "manifestly aware of the use [to which] the information will be put" and "intends to supply it for that purpose." *Sain*, 626 N.W.2d at 125. Donnelly does not and cannot allege such a relationship. He concedes he subscribed to *The Register* for "news," not to obtain personalized voting advice. (*See* App. 11; R.Doc. 22, at ¶2.)

Because Press Defendants are not "in the business or profession of supplying information for the guidance of others" under Iowa law, the district court rightly dismissed Donnelly's negligent misrepresentation claim. This Court should affirm. It may also affirm dismissal for the same reasons the fraudulent misrepresentation claim fails because the claims share overlapping elements—*i.e.*, Donnelly has not plausibly alleged any actionable false statement or justifiable reliance. *See Mitec Partners, LLC v. U.S. Bank Nat'l Ass'n*, 605 F.3d 617, 624-25 (8th Cir. 2010) (noting justifiable reliance is a common element); *Dierickx v. DreamDirt Farm & Ranch Real Estate, LLC*, 30 N.W.3d 744, 755-56 (Iowa Ct. App. 2025) (noting false statement is a common element).

### C. Donnelly does not assert a plausible claim for relief under the Iowa Consumer Fraud Act.

Donnelly alleges that Defendants violated the Iowa Consumer Fraud Act ("ICFA"). (App. 40-43; R.Doc. 22, at ¶¶158-167.) The district court correctly dismissed his claim because he failed to "plausibly allege [that] Defendants engaged in an unfair



Appellate Case: 25-3451 Page: 68 Date Filed: 04/10/2026 Entry ID: 5628030

or deceptive practice[.]" (App. 78; R.Doc. 48, at 17, Add. 28.) Alternatively, this Court may affirm because Donnelly failed to sufficiently plead other necessary elements of his ICFA claim.

#### 1. Donnelly failed to adequately allege an unfair or deceptive practice in violation of ICFA.

ICFA prohibits "unfair practices" and "deceptive practices." *See State ex rel. Miller v. Cutty's Des Moines Camping Club, Inc.*, 694 N.W.2d 518, 527 (Iowa 2005). An *unfair practice* is one "which causes substantial, unavoidable injury to consumers that is not outweighed by any consumer or competitive benefits which the practice produces." Iowa Code § 714H.2(9) (incorporating the definition of the term from Iowa Code § 714.16(1)(*i*)). "A course of conduct contrary to what an ordinary consumer would anticipate contributes to a finding of an unfair practice." *State ex rel. Miller v. Vertrue, Inc.*, 834 N.W.2d 12, 37 (Iowa 2003). A *deceptive practice* is one "that is likely to mislead a substantial number of consumers as to a material fact or facts." Iowa Code § 714H.2(5). Clear, accurate disclosures cut against a finding of an unfair or deceptive practice. *See Albaugh v. The Reserve*, 930 N.W.2d 676, 685 (Iowa 2019); *Bass*, 880 N.W.2d at 764.

Here, the district court correctly ruled that "publishing the results of a political opinion poll that matches the co-published methodology is not an unfair or deceptive practice." (App. 76; R.Doc. 48, at 15, Add. 26.) As the court observed, "[t]he article fully described the poll results, the poll methodology, and provided additional analysis of the surprising nature of the results." (App. 78; R.Doc. 48, at 17, Add. 28.) Therefore,



Appellate Case: 25-3451 Page: 69 Date Filed: 04/10/2026 Entry ID: 5628030

"readers knew exactly how the poll was conducted and what results it yielded." (*Id.*) These disclosures defeat any purported ICFA violation. *Cf. Vertrue*, 834 N.W.2d at 35-37 (obfuscatory tactics designed to "lure unwitting consumers into enrolling in membership programs" was unfair and deceptive practice). The district court also rightly concluded that the "mere inaccuracy of an opinion poll [cannot] constitute[] an unfair practice," consistent with the forward-looking nature of a poll, discussed *supra*. (App. 77; R.Doc. 48, at 16, Add. 27.)

Donnelly's attempts to evade the district court's ruling are unpersuasive. First, he claims that the district court erred by "evaluat[ing] whether the Iowa Poll was deceptive rather than . . . ask[ing] whether the statements made to sell the *Register* were deceptive." (Op.Br. 56.) But the district court simply evaluated his claims as he pleaded them: *i.e.*, that "[t]he decision by Dr. Selzer and the Register to report *the poll* as an accurate news item when in fact it was obviously inaccurate constituted an unfair practice, deception, fraud, [and] misrepresentation of a material fact." (App. 42; R.Doc. 22, at ¶164 (emphasis added).) The pleading states that the publication of the Iowa Poll results was the allegedly violative conduct, and the district court rightly analyzed Donnelly's claim on that basis.[10]

---

[10] Because Donnelly pleads that the publication of the Iowa Poll results—not "statements made to sell the *Register*"—constituted the alleged unfair or deceptive practice, his citations to case law regarding post-sale conduct are irrelevant. (Op.Br. 55-56); *see Riley v. St. Louis Cnty.*, 153 F.3d 627, 629 (8th Cir. 1998) (stating that when reviewing a Rule 12(b)(6) dismissal, this Court "look[s] only to the facts alleged in the complaint"). Furthermore, post-sale conduct cannot violate ICFA unless it is "in



Appellate Case: 25-3451 Page: 70 Date Filed: 04/10/2026 Entry ID: 5628030

Next, Donnelly objects to the district court's determination that Defendants did not engage in conduct contrary to ordinary consumer expectations. (Op.Br. 58-60.) He argues that Press Defendants failed to disclose "partisan weighting" in the Iowa Poll's "underlying data," which "threw off the poll results." (*Id.* at 58.) But he doesn't allege that "the disclosed methodology was not followed, that results were falsified, or that Defendants altered the poll in some other way which did not reflect the publicly disclosed methodology." (App. 73; R.Doc. 48, at 12, Add. 23.) Different pollsters' use of different methodologies is not unfair or deceptive, nor does it run counter to an ordinary consumer's expectations. (*See* App. 14, 17, 19; R.Doc. 22, at ¶¶15, 31, 42 (acknowledging past divergent opinion polling results).)

Finally, Donnelly argues that the district court's treatment of consumer expectations unfairly drew "a reasonable inference *against* [him] rather than in his favor." (*See* Op.Br. 59-60.) But it is Donnelly's burden to plead a plausible claim. *SuperValu, Inc.*, 925 F.3d at 962. He cannot evade this burden by appealing to ICFA's "flexible equitable principles." *Vertrue*, 834 N.W.2d at 37 (citation omitted); *see, e.g.*, *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 718 (8th Cir. 2019) (affirming dismissal of state consumer fraud claim); *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 927 (8th Cir. 2004) (same). Courts properly make legal determinations regarding "ordinary" or "reasonable" consumers' expectations on motions to dismiss, as the district court did

---

connection with" the sale or advertisement of merchandise, which Donnelly has not pleaded here. *See* Iowa Code § 714H.3.



Appellate Case: 25-3451 Page: 71 Date Filed: 04/10/2026 Entry ID: 5628030

here. *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995). And even if the district court accepted an expectation of "reasonable accuracy," that does not conflict with the dispositive consumer expectation "that polling is an inexact science which can yield errant results." (App. 77; R.Doc. 48, at 16, Add. 27.)

**2. Donnelly's ICFA claim fails to sufficiently plead additional necessary elements regarding materiality, connection to sale or advertisement, and injury.**

This Court may also affirm dismissal of Donnelly's ICFA claim for its failure to sufficiently plead additional ICFA elements.

First, ICFA requires any misrepresentation of fact to be material. *Vertrue*, 834 N.W.2d at 34. A statement of fact is only "material" if it creates a "misleading impression" involving "information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Id.* (quoting *F.T.C. v. Cyberspace.Com LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006)). Donnelly alleges that the Iowa Poll was generically "material" because "it was long regarded as the standard in Iowa politics, and it was the banner headline story for the day that it ran." (App. 37, 43; R.Doc. 22, at ¶¶135, 166.) But he makes no allegation that the Iowa Poll affected his "choice of, or conduct regarding," *The Register* or any other consumer product. He does not plead that he chose to subscribe to *The Register* because it contained the Iowa Poll results, nor does he plead that he canceled his subscription because of the articles



Appellate Case: 25-3451 Page: 72 Date Filed: 04/10/2026 Entry ID: 5628030

regarding the poll results. (App. 13; R.Doc. 22, at ¶8.) Accordingly, Donnelly has not alleged any *material* statement of fact.

Second, Donnelly did not plead that any allegedly violative conduct was "in connection with the advertisement, sale, or lease of consumer merchandise." *See* Iowa Code § 714H.3. An ICFA plaintiff must show "some relation or nexus" between the prohibited act and the merchandise in question. *Cutty's*, 694 N.W.2d at 526. Donnelly alleges the "merchandise" at issue is *The Register*. (App. 42; R.Doc. 22, at ¶¶161-62.) Accordingly, Donnelly needed to plead that Press Defendants engaged in unfair or deceptive practices *related to the sale or advertisement of The Register*. He did not.

Donnelly does not plead any nexus between publishing the Iowa Poll results and solicitation of sales of *The Register*. The Iowa Poll articles plainly are not advertisements—their substance contains no call to purchase or subscribe to anything. *Cf.* Iowa Code. § 714H.2(2); *State v. Cusick*, 84 N.W.2d 554, 556 (Iowa 1957) ("[A]dvertising is a method, in a broad sense, of soliciting the public to purchase the wares advertised."). Even if they were, ICFA expressly bars liability against Press Defendants on that basis. *See* Iowa Code § 714H.4(1)(*c*) ("This chapter shall not apply to . . . the newspaper . . . in which the advertisement appears, including the publisher of the newspaper, . . . [or] employee, agent, or representative of the publisher [or] newspaper[.]"). Donnelly also does not allege that any decision to subscribe to *The Register* (*i.e.*, the "sale" of "consumer merchandise") was connected to the publication of the Iowa Poll results. The opposite is true: as an existing "longtime subscriber," his

decision to subscribe to *The Register* could not have been connected. (App. 13; R.Doc. 22, at ¶8.)

Finally, Donnelly has not pleaded that he suffered "an ascertainable loss of money or property as the result of a prohibited practice or act." Iowa Code § 714H.5(1). He does not plead that he initiated his subscription in reliance on articles related to the substance of the Poll results. *See Tri-Plex Tech. Servs., Ltd. v. Jon-Don, LLC*, 241 N.E.3d 454, 462 (Ill. 2024) ("If the plaintiff has neither seen nor heard a deceptive statement, it cannot have relied on the statement and, consequently, cannot prove that the statement was the proximate cause of its injury."); *see also State ex rel. Miller v. Hydro Mag, Ltd.*, 436 N.W.2d 617, 621-22 (Iowa 1989) (holding Iowa courts rely on "Illinois courts' application of their own consumer fraud act" in interpreting ICFA). Accordingly, he has not pleaded the required causation. *Cf. Brown v. Louisiana-Pacific Corp.*, 820 F.3d 339, 349 (8th Cir. 2016) (affirming summary judgment on ICFA claim where plaintiff could not show that but for the "purported misrepresentation, [plaintiff] would not have elected to purchase" the product in question).

This Court may affirm the district court's dismissal of the ICFA claim based on any one of these additional deficiencies.

### D. Donnelly's professional malpractice claim fails because no cognizable duty exists.

Donnelly claims that Defendants committed professional malpractice. (App. 45; R.Doc. 22, at ¶180.) The district court dismissed the claim because "[t]he nature of the

relationship between newspapers and their readers . . . does not impose such a general duty." (App. 79; R.Doc. 48, at 18, Add. 29.) As the district court stressed (and Donnelly concedes), Iowa law does not impose such a duty on newspapers, "and courts generally find no such duty exists." (*Id.*; *see* Op.Br. 61 (admitting that "there is no Iowa law imposing such a duty").) That ends the inquiry.

Donnelly nevertheless asks this Court to manufacture such a duty here, relying on a Hawaii case for the proposition that "[a] newspaper has a duty of care for information that it authors or approves." (App. 44; R.Doc. 22, at ¶179.) *See Birmingham v. Fodor's Travel Pubs.*, 833 P.2d 70 (Haw. 1992). To the contrary, that case supports the district court's ruling.

In *Birmingham*, the plaintiff sustained an injury while body surfing near a beach he discovered in a travel guide. 833 P.2d at 73. The Hawaii Supreme Court concluded that "the [g]uide was a work of general circulation" and the defendant "neither authored nor expressly guaranteed the contents of the [g]uide." *See id.* at 76-77. Therefore, the defendant "*had no duty* to warn the [plaintiff] of the accuracy of the information contained in the [g]uide." *Id.* (emphasis added).

Likewise, *The Register* is a work of general circulation, and it is only alleged to have reported the results of the Iowa Poll. (*See* App. 43-44; R.Doc. 22, at 33-34 ¶180-81.) Donnelly seeks to hold Press Defendants liable as "the directly responsible first-party author of information." (Op.Br. 62.) But he has not alleged that Press Defendants were the "first-party author" or designer of the Iowa Poll results or that Press Defendants

"guarantee[] or warrant[y] the poll's veracity." (*Id.* at 63.) *Contra Hanberry v. Hearst Corp.*, 81 Cal. Rptr. 519, 521 (Cal. Ct. App. 1969) (magazine publisher provided express warranty by a "Guaranty Seal"). Because Press Defendants did not independently author or guarantee the Iowa Poll results, *Birmingham* confirms the district court's dismissal was proper.

### E. Donnelly's claim for "interference with the right to vote" is not recognized under Iowa law.

Donnelly claims that Defendants interfered with his right to vote. (App. 45-47; R.Doc. 22, at ¶¶184-91.) The district court correctly dismissed the claim because "no such tort exists under Iowa law." (App. 80; R.Doc. 48, at 19, Add. 30.) Donnelly asks this Court to hold otherwise based on one inapposite case over a century old. (Op.Br. 65-66.) The Court should decline.

Donnelly misstates the narrow issue before the court in his sole cited case. *See Lane v. Mitchell*, 133 N.W. 381 (Iowa 1911). In *Lane*, the court considered an action based upon a statutory violation of the 1897 Iowa Code by election judges. *Id.* at 382 ("[T]he plaintiff insisted that he be sworn, as provided by section 1115 of the Code, and . . . allowed to vote."). *Lane* "makes no mention of a cognizable tort under Iowa law for interference with the right to vote." (App. 80; R.Doc. 48, at 19, Add. 30.) Nor does Donnelly cite to any subsequent case suggesting that *Lane* established or recognized such a tort under Iowa law. He resorts only to non-controlling characterizations of *Lane* in Restatement provisions. (Op.Br. 66.) But the Restatements



Appellate Case: 25-3451 Page: 76 Date Filed: 04/10/2026 Entry ID: 5628030

are not independent sources of law, and no Iowa court has ever adopted the Restatement provision that Donnelly cites. (*Cf. id.* (citing Restatement (Second) of Torts § 865).)

There is no such claim as "interference with the right to vote" in Iowa, and the district court properly dismissed.

### F. Because Donnelly's substantive claims fail, his civil conspiracy claim fails as well.

Donnelly has not adequately alleged any underlying tort that could provide a basis for his civil conspiracy claim. *See Wright v. Brooke Grp. Ltd.*, 652 N.W.2d 159, 172 (Iowa 2002). The district court rightly dismissed it. (App. 81; R.Doc. 48, at 20, Add. 31.)

## CONCLUSION

The district court rightly retained jurisdiction over this class action pursuant to CAFA. Every one of Donnelly's claims fails for independently sufficient reasons under the U.S. Constitution and Iowa state law. This Court should affirm the district court.